| | |
|---|---|
| DISTRICT COURT, ADAMS COUNTY, COLORADO<br>Address: 1100 Judicial Center Drive<br>           Brighton, CO 80601<br>Phone No.: (303) 659-1161 | DATE FILED: May 29, 2018 3:10 PM<br>FILING ID: D676DCCC6ACFB<br>CASE NUMBER: 2018CV30933 |
| **CYNTHIA NELSON,**<br><br>*Plaintiff,*<br><br>v.<br><br>**HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY,**<br>**UNIVERSITY OF COLORADO HOSPITAL AUTHORITY,** and<br>**UNIVERSITY OF COLORADO HOSPITAL AUTHORITY LONG TERM DISABILITY PLAN,**<br><br>*Defendants.* | ▲COURT USE ONLY▲<br><br>Case Number:<br><br>Div. |
| *Attorneys for Plaintiff:*<br>Shawn E. McDermott, #21965<br>Timothy M. Garvey, #42668<br>MᴄDERMOTT LAW, LLC<br>2300 15ᵗʰ Street, Suite 200<br>Denver, Colorado 80202<br>303-964-1800<br>303-964-1900 (fax)<br>*shawn@mcdermottlaw.net*<br>*tim@mcdermottlaw.net* | |

## COMPLAINT AND JURY DEMAND

Plaintiff, Cynthia Nelson, by and through her counsel of record, McDermott Law, LLC, for

her Complaint and Jury Demand against Defendant, Hartford Life and Accident Insurance Company,

states and alleges as follows:

## I.      JURISDICTION, VENUE, PARTIES

1.      Ms. Nelson, at all times pertinent hereto, is and was a resident of the State of Colorado.



2.     Defendant Hartford is a Connecticut insurance company, with its principal place of business in Hartford, Connecticut.

3.     Defendant University of Colorado Hospital Authority is a resident of the State of Colorado.

4.     Hartford is and at all times relevant was registered with the Colorado Division of Insurance to conduct, and does conduct, the business of insurance in the State of Colorado.

5.     Ms. Nelson was employed by Defendant University of Colorado Hospital Authority as a Registered Nurse in Interventional Radiology.

6.     As an employee of University of Colorado Hospital Authority, Ms. Nelson participated in the University of Colorado Hospital Authority employee benefits plan (the "Plan").

7.     The Plan constitutes an employee benefit providing, among other benefits, long-term disability ("LTD") insurance benefits to Plan participants, including Ms. Nelson.

8.     The Plan is considered a "governmental plan" as that term is defined in 29 U.S.C. § 1002(32).

9.     Because the Plan is a "governmental plan," it is exempt from the Employee Retirement Income Security Act ("ERISA") under 29 U.S.C. § 1003 (b)(1).

10.    As part of the Plan, Hartford issued a Group Long Term Disability Insurance, Group Policy Number GLT206639, (the "LTD Policy") to University of Colorado Hospital Authority and for the benefit of its employees, including Ms. Nelson. (A true and correct copy of the LTD Policy is attached hereto and incorporated herein as **Exhibit 1**).

11.    The LTD Policy was issued to Ms. Nelson, as an eligible Plan participant, in the State of Colorado.

12.    The LTD Policy was paid for in the State of Colorado.

13.    The LTD Policy's effective date was October 1, 2012.

14.     Upon information and belief, Hartford makes all determinations regarding claimants' eligibility for LTD benefits under the LTD Policy.

15.     Upon information and belief, Hartford, as the insurer and underwriter of the LTD Policy, must pay benefits to a Plan participant consistent with the terms of the LTD Policy.

16.     If a Plan participant, such as Ms. Nelson, is entitled to LTD benefits under the LTD Policy, Hartford must pay from its own funds all benefits owed to the Plan participant.

17.     Because Hartford is both the claim administrator and the payor of benefits under the LTD Policy and the Plan, Hartford suffers from an inherent conflict of interest.

18.     Hartford, as the insurer, owes Plan participants, such as Ms. Nelson, the duties of good faith and fair dealing when handling claims for benefits under the LTD Policy.

19.     Hartford's breaches of both the LTD Policy and the duties it owed to Ms. Nelson occurred in the State of Colorado.

20.     The tortious conduct alleged in this action occurred in the State of Colorado.

21.     The injuries Ms. Nelson suffered as a result of Hartford's breaches and tortious conduct occurred in the State of Colorado.

22.     This Court has subject matter jurisdiction over the issues asserted in this Complaint and Jury Demand.

23.     Venue is proper in this Court, which Ms. Nelson designates as the site for this action.

## II.     GENERAL ALLEGATIONS

### A.     The Insurance Policy at Issue

24.     Under the LTD Policy, Hartford promised to pay LTD benefits to any Plan participant, including Ms. Nelson, so long as that participant satisfied the Policy's definition of "disability."

25.     The LTD Policy defines "Disability/Disabled" as follows:

3

Disability or Disabled means You are prevented from performing one or more of the Essential Duties of:

1. You Occupation during the Elimination Period;

2. Your Occupation, for the 2 year(s) following the Elimination Period, and as a result Your Current Monthly Earnings are less than 80% of Your Indexed Pre-Disability Earnings; and

3. After that, Any Occupation.

Any Occupation is defined as:

An occupation for which you are qualified by education, training or experience, and that has an earnings potential greater than an amount equal to the lesser of the product of your Indexed Pre-disability Earnings and the Benefit Percentage for which you enrolled and the Maximum Monthly Benefits shown in the Schedule of Insurance.

26.     The Policy does not require objective evidence of disability for a claimant to qualify for benefits.

**B.     Ms. Nelson's Disabling Conditions**

27.     The medical records previously provided to Defendant Hartford demonstrate that Ms. Nelson started to suffer migraines in 2014.

28.     The medical records previously provided to Defendant Hartford demonstrate that from 2014, forward, Ms. Nelson's migraines gradually increased in frequency and intensity.

29.     The medical records previously provided to Defendant Hartford demonstrate that Ms. Nelson regularly experiences intense throbbing sensations, as well as nausea, vomiting, and extreme sensitivity to light and sound.

30.     The medical records previously provided to Defendant Hartford demonstrate that Ms. Nelson's migraines can incapacitate her from a few hours to a few days at a time.

31.     The medical records previously provided to Defendant Hartford demonstrate that by 2015, Ms. Nelson's migraines became so persistent and so disabling, that she was forced to leave her career.

32.     The medical records previously provided to Defendant Hartford demonstrate that Ms. Nelson also suffers from bilateral carpal tunnel syndrome caused by a compressed nerve in the carpal tunnel.

33.     The medical records previously provided to Defendant Hartford demonstrate that Ms. Nelson tried steroid injections to alleviate the symptoms of her carpal tunnel syndrome, but those injections were unsuccessful in resolving her carpal tunnel syndrome.

34.     The medical records previously provided to Defendant Hartford demonstrate that on August 7, 2015, Ms. Nelson underwent decompression of the median nerve in her left wrist.

35.     The medical records previously provided to Defendant Hartford demonstrate that on December 14, 2015, Ms. Nelson underwent decompression of the median nerve in her right writs.

36.     The medical records previously provided to Defendant Hartford demonstrate that several months after the surgeries, the symptoms associated with carpal tunnel syndrome returned to both wrists.

37.     The medical records previously provided to Defendant Hartford demonstrate that Ms. Nelson underwent electrodiagnostic testing in July of 2016, which showed right sensory demyelinating median neuropathy without denervation—carpal tunnel syndrome.

38.     The medical records previously provided to Defendant Hartford demonstrate that Ms. Nelson underwent an endoscopic cubital tunnel release on April 3, 2017.

39.     The medical records previously provided to Defendant Hartford demonstrate that Ms. Nelson suffers from severe pain in her cervical spine.

40.     The medical records previously provided to Defendant Hartford demonstrate that Ms. Nelson underwent an MRI on June 23, 2017.

41.     The medical records previously provided to Defendant Hartford demonstrate that the MRI revealed degenerative disc disease at multiple levels, most prominently at C5-6 and C6-7, and showed narrowing of the canal at C5-6 and foraminal at C3-4.

42.     The medical records previously provided to Defendant Hartford demonstrate that Ms. Nelson underwent physical therapy and chiropractic adjustments, neither of which have provided any significant relief from the pain in her cervical spine.

43.     The medical records previously provided to Defendant Hartford demonstrate that Ms. Nelson's diagnosed medical issues qualify as a sickness and/or injury under the LTD Policy.

44.     The medical records (and other documents) previously provided to Defendant Hartford demonstrate that Ms. Nelson's diagnosed medical issues cause severe and persistent pain in her head, wrists, arms, and neck.

45.     The medical records (and other documents) previously provided to Defendant Hartford demonstrate that the pain Ms. Nelson suffers from as a result of her diagnosed medical issues make it difficult for her to perform the duties of any occupation due to pain and an inability to concentrate when suffering from a migraine.

46.     The medical records (and other documents) previously provided to Defendant Hartford demonstrate that Ms. Nelson's diagnosed medical issues render her unable to perform the material duties of Any Occupation.

**C.    Ms. Nelson's Claims for Benefits Under the Plan and Policy**

47.     Because of the disabling conditions described above, Ms. Nelson stopped working at the University of Colorado Hospital Authority in November of 2014.

48.     Because Ms. Nelson was unable to perform the material duties of her Regular Occupation, she submitted a claim for short-term disability ("STD") benefits under the Plan.

49.     Hartford approved Ms. Nelson's STD claim with an effective date of November 18, 2014.

50.     Under the STD policy, the maximum benefit period for STD benefits is six months.

51.     As the six-month period neared its end, Hartford notified Ms. Nelson it was beginning to review her claim for LTD benefits under the LTD Policy.

52.     By letter dated June 3, 2015, Hartford informed Ms. Nelson that it was approving her claim for LTD benefits retroactive to May 19, 2015.

53.     Thereafter, Hartford continued to pay Ms. Nelson's LTD claim, implicitly agreeing that Ms. Nelson remained unable to perform the material duties of her own occupation.

54.     By letter dated November 19, 2016, Hartford notified Ms. Nelson that the LTD Policy's definition of disability would change on May 5, 2017.

55.     In its November 19, 2016, letter, Hartford informed Ms. Nelson that as of that May 5, 2017, "you must be considered Disabled as outlined in the Any Occupation portion of the … definition [of disability] in order to continue to be eligible for LTD benefits."

56.     By letter dated May 30, 2017, Hartford informed Ms. Nelson that it was terminating her LTD benefits effective that same day because "you do not meet the policy definition of Disability beyond 5/18/17."

57.     Ms. Nelson appealed Hartford's adverse determination by letter dated June 6, 2017.

58.     In her appeal, Ms. Nelson informed Hartford, among other things, that she continued to suffer from "debilitating migraine headaches 2–3 days a week" and that she was consulting with a spinal surgeon.

59.     In her appeal, Ms. Nelson also submitted letters from two of her treating medical providers, both of whom concluded that Ms. Nelson was unable to work in any occupation.

60.     By letter dated July 31, 2017, Hartford upheld its decision to terminate Ms. Nelson's benefits.

61.     Hartford allowed Ms. Nelson the opportunity to submit a second appeal.

62.     With the assistance of undersigned counsel, Ms. Nelson submitted a second-level appeal on February 2, 2018.

63.     With her second level appeal, Ms. Nelson submitted additional medical records, a Functional Abilities Evaluation, and arguments demonstrating that Hartford's termination of her benefits was erroneous and that she remained unable to perform the material duties of any occupation.

64.     The additional medical records and Functional Abilities Evaluation demonstrated that Ms. Nelson could not perform the material duties of any occupation.

65.     By letter dated March 19, 2018, Hartford upheld its decision to terminate Ms. Nelson's benefits.

**D.     Hartford's Adverse Benefit Determination was Unsupported**

66.     Under standard disability insurance industry practices, when an insurer terminates an insured's LTD benefits, it must have evidence that the insured's condition improved and that the insured no longer meets the policy's definition of disability.

67.     In terminating Ms. Nelson's LTD benefits, Hartford ignored documents and information it had available to it from Plaintiff, her treating medical providers, and others demonstrating that she is unable to perform the material duties of any occupation.

68.     In terminating Ms. Nelson's LTD benefits, Hartford gave no consideration to Ms. Nelson's complaints of pain.

69.     In terminating Ms. Nelson's LTD benefits, Hartford had no evidence that Ms. Nelson's condition improved between May 19, 2015, when Hartford approved benefits, and May 18, 2017, when it terminated her LTD benefits.

70.     Under the Policy, Hartford granted itself the right to require Ms. Nelson to submit to an examination to assist it in determining whether she remained disabled after Hartford initially approved the claim.

71.     In terminating Ms. Nelson's LTD benefits, Hartford did not request Ms. Nelson to submit to any examination.

72.     Under the LTD Policy, Hartford granted itself the right to review an approved claim and determine for itself whether the claimant was a suitable candidate for rehabilitation, and, if Hartford believed the claimant was a suitable candidate for rehabilitation, the LTD Policy permitted Hartford to have the claimant submit to a rehabilitation program.

73.     In terminating Ms. Nelson's LTD benefits, Hartford did not request Ms. Nelson to submit to a rehabilitation program.

74.     In terminating Ms. Nelson's LTD benefits, Hartford did not provide its medical reviewers with all of Ms. Nelson's medical records that were in Hartford's possession.

75.     From May 19, 2015, (when Hartford approved Ms. Nelson's benefits) through now, Ms. Nelson has been and remains disabled as defined in the LTD Policy.

76.     At all times pertinent hereto, Hartford was and continues to be liable for paying Ms. Nelson's LTD benefits under the LTD Policy.

77.     Ms. Nelson provided Hartford with all information it requested during the claim review and appeal periods.

78.     Hartford's termination of Ms. Nelson's LTD benefits was contrary to the evidence of record and is unreasonable, incorrect, improper, and unsupported by the evidence.

79.     Hartford's acts and omissions have compelled Ms. Nelson to sue to recover benefits owed to her under the LTD Policy.

80.     Hartford's acts and omissions are and were designed to discourage Ms. Nelson from asserting her rights and asserting her claims with regard to LTD benefits.

81.     Hartford knew, or should have known, that its acts and omissions were unreasonable, or it recklessly disregarded the fact that they were unreasonable.

82.     As a direct and proximate result of the Hartford's conduct, Ms. Nelson has suffered damages including, without limitation, compensable economic and noneconomic harms and losses.

### III.    FIRST CLAIM FOR RELIEF
### (Breach of Contract – Against All Defendants)

83.     Plaintiff realleges each and every allegation of above and below as if fully set forth herein.

84.     The LTD Plan established by the University of Colorado Hospital Authority constitutes a contract.

85.     The LTD Policy issued by Hartford also constitutes a contract of insurance.

86.     Plaintiff has been entitled to receive LTD benefits from the University of Colorado Hospital Authority and pursuant to  the promise to pay such benefits as set forth in the LTD Plan and Policy from the date of termination of the claim through now and likely through the LTD Plan and Policy's end date.

87.     Plaintiff is entitled to payment of past-due LTD benefits under the Plan and the LTD Policy.

88.     Through the acts and omissions described herein, as well as those yet to be uncovered through discovery, Defendants breached the contracts (i.e., the LTD Plan and the LTD Policy).

89.     Defendants' breach of the contracts has caused Plaintiff to suffer injuries, damages, and losses in amounts to be proven at trial.

## IV.     SECOND CLAIM FOR RELIEF
### (Bad Faith Breach of Insurance Contract – Against Defendant Hartford Life and Accident Insurance Company)

90.     Plaintiff realleges each and every allegation of above and below as if fully set forth herein.

91.     Defendant owed quasi-fiduciary duties to Plaintiff as her insurer.

92.     Defendant owed duties to Plaintiff under the LTD Policy's implied covenant of good faith and fair dealing, wherein Defendant covenanted that it would, in good faith and in the exercise of fair dealing, deal with Plaintiff fairly and honestly, and do nothing to impair, interfere with, hinder, or potentially injure Plaintiff's rights to receive the benefits of the insurance contract.

93.     Defendant breached its quasi-fiduciary duties and its duties of good faith and fair dealing by its actions, which included, without limitation, the following unreasonable acts:

a.     Disregarding Ms. Nelson's rights or having a reckless disregard that its conduct was unreasonable;

b.     Failing to pay Plaintiff's claim for LTD benefits under the LTD Policy;

c.     Ignoring the opinions of Plaintiff's treating physicians regarding the nature of her disability;

d.     Refusing to pay claims without conducting a reasonable investigation based upon all available information;

e.     Placing its interests in not paying benefits ahead of Ms. Nelson's interest in receiving benefits owed under the LTD Policy;

f.     Failing to properly investigate Ms. Nelson's claims for benefits;

g.     Terminating Ms. Nelson's benefits with no reasonable basis for doing so;

h.     Selectively considering only those records and documents that supported its decision to terminate benefits;

     i.     Forcing Ms. Nelson to sue to obtain benefits owed to her under the LTD Policy; and

     j.     Other conduct to be revealed during discovery.

94.     Defendant knew its acts and omissions were unreasonable, or it recklessly disregarded the reasonableness of its acts and omissions.

95.     As a proximate result of Defendant's actions, Plaintiff has suffered economic damages and losses in an amount to be proved at trial, including, but not limited to:

     a.     The contract benefits;

     b.     Being forced to incur additional attorneys' fees and costs in litigation;

     c.     The adverse effect on her financial well-being from the denial of benefits; and

     d.     Other losses and damages alleged elsewhere herein.

96.     As a proximate result of the Defendant's actions and conduct, Plaintiff sustained compensable non-economic injuries, including without limitation, pain and suffering, inconvenience, emotional stress, and impairment of the quality of life, in amounts to be proved at trial.

## V.     THIRD CLAIM FOR RELIEF
### (Violation of C.R.S. § 10-3-1115 and Relief under C.R.S. § 10-3-1116 – Against Defendant Hartford Life and Accident Insurance Company)

97.     Plaintiff realleges each and every allegation of above and below as if fully set forth herein.

98.     Plaintiff is a "first-party claimant" as that term is defined under C.R.S. § 10-3-1115.

99.     The LTD Policy is a contract of insurance issued in the State of Colorado in 2009 or after.

100.     Through the acts and omissions alleged herein, and others likely to be uncovered during discovery, Hartford unreasonably denied Ms. Nelson's claim for LTD benefits within the meaning of C.R.S. § 10-3-1115.

101.    Through the acts and omissions alleged herein, and others likely to be uncovered during discovery, Hartford unreasonably delayed payment of Ms. Nelson's claim for LTD benefits within the meaning of C.R.S. § 10-3-1115.

102.    Under C.R.S. § 10-3-1116(1), Ms. Nelson may bring this action in this Court to recover reasonable attorneys' fees, court costs, and two times the covered benefit.

**WHEREFORE**, Plaintiff Cynthia Nelson asks that judgment be entered in her favor and against the Defendants as follows:

1.    For payment of all LTD benefits due under the LTD Pland and LTD Policy;

2.    For a declaration that Ms. Nelson remains disabled under the terms of the LTD Plan and Policy;

3.    For compensatory economic, noneconomic, and special damages in amounts to be proven at trial;

4.    For interest (statutory and moratory) as provided by law on benefits owed under the LTD Plan and Policy;

5.    For two times the covered insurance benefit, pursuant to C.R.S. §10-3-1116;

6.    For attorneys' fees and other costs of suit, including expert witness fees, as permitted by law; and

7.    For such other and further relief as the Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Respectfully submitted this 29th day of May, 2018.

McDermott Law, LLC

**s/ Timothy M. Garvey**
Timothy M. Garvey, #42668
Shawn E. McDermott, #21965
2300 15th Street, Suite 200
Denver, CO 80202
(303) 964-1800
(303) 964-1900
*tim@mcdermottlaw.net*
*shawn@mcdermottlaw.net*
**Attorneys for Plaintiff**

Plaintiff's Address:
Cynthia Nelson
11390 Harlan Street
Westminster, CO 80020

DATE FILED: May 29, 2018 3:10 PM
FILING ID: D676DCCC6ACFB
CASE NUMBER: 2018CV30933

# YOUR BENEFIT PLAN

# UNIVERSITY OF COLORADO HOSPITAL AUTHORITY

**Long Term Disability**

## Questions or Complaints about Your Coverage

In the event You have questions or complaints regarding any aspect of Your coverage, You should contact Your Employee Benefits Manager or You may write to us at:
The Hartford
Group Benefits Division, Customer Service
P.O. Box 2999
Hartford, CT 06104-2999

**Or call Us at:** 1-800-523-2233
When calling, please give Us the following information:
1) the policy number; and
2) the name of the policyholder (employer or organization), as shown in Your Certificate of Insurance.

**Or You may contact Our Sales Office:**
Hartford Life and Accident Insurance Company
Group Sales Department
7670 South Chester Street
Suite 300
Englewood, CO 80112
TOLL FREE: 866-460-1855
FAX: 303-792-5870

If you have a complaint, and contacts between you and the Insurer or an agent or other representative of the Insurer have failed to produce a satisfactory solution to the problem, the following states require we provide you with additional contact information:

| For residents of: | Write | Telephone |
|---|---|---|
| Arkansas | Arkansas Insurance Department<br>Consumer Services Division<br>1200 West Third Street<br>Little Rock, AR 72201-1904 | 1(800) 852-5494<br>1(501) 371-2640 (in the Little Rock area) |
| California | State of California Insurance Department<br>Consumer Communications Bureau<br>300 South Spring Street, South Tower<br>Los Angeles, CA 90013 | 1(800) 927-HELP |
| Idaho | Idaho Department of Insurance<br>Consumer Affairs<br>700 W State Street, 3rd Floor<br>PO Box 83720<br>Boise, ID 83720-0043 | 1-800-721-3272 or www.DOI.Idaho.gov |
| Illinois | Illinois Department of Insurance<br>Consumer Services Station<br>Springfield, Illinois 62767 | Consumer Assistance: 1(866) 445-5364<br>Officer of Consumer Health Insurance:<br>1(877) 527-9431 |
| Indiana | Public Information/Market Conduct<br>Indiana Department of Insurance<br>311 W. Washington St. Suite 300<br>Indianapolis, IN 46204-2787 | Consumer Hotline: 1(800) 622-4461<br>1(317) 232-2395 (in the Indianapolis Area) |
| Virginia | Life and Health Division<br>Bureau of Insurance<br>P.O. Box 1157<br>Richmond, VA 23209 | 1(804) 371-9741 (inside Virginia)<br>1(800) 552-7945 (outside Virginia) |
| Wisconsin | Office of the Commissioner of Insurance<br>Complaints Department<br>P.O. Box 7873 | 1(800) 236-8517 (outside of Madison)<br>1(608) 266-0103 (in Madison)<br>to request a complaint form. |

Madison, WI 53707-7873

## The following states require that We provide these notices to You about Your coverage:

**For residents of:**

**Arizona**      This certificate of insurance may not provide all benefits and protections provided by law in Arizona. Please read This certificate carefully.

**Florida**      The benefits of the policy providing you coverage are governed primarily by the laws of a state other than Florida.

# STATE OF DELAWARE
## The Civil Union and Equality Act of 2011
## Effective January 1, 2012

In accordance with Delaware law, Insurers are required to provide the following notice to applicants of insurance policies issued in Delaware.

The Civil Union and Equality Act of 2011 ("the Act") creates a legal relationship between two persons of the same sex who form a civil union. The Act provides that the parties to a civil union are entitled to the same legal obligations, responsibilities, protections and benefits that are afforded or recognized by the laws of Delaware to spouses in a legal marriage. The law further provides that a party to a civil union shall be included in any definition or use of the terms "spouse," "family," "immediate family," "dependent," "next of kin," and other terms descriptive of spousal relationships as those terms are used throughout Delaware law. This includes the terms "marriage" or "married," or variations thereon. Insurance policies are required to provide identical benefits and protections to both civil unions and marriages. If policies of insurance provide coverage for children, the children of civil unions must also be provided coverage. The Act also requires recognition of same sex civil unions or marriages legally entered into in other jurisdictions.

For more information regarding the Act, refer to Chapter 2 of Title 13 of the Delaware Code or the State of Delaware website at www.delaware.gov/CivilUnions.

### Georgia

The laws of the state of Georgia prohibit insurers from unfairly discriminating against any person based upon his or her status as a victim of family abuse.

# STATE OF ILLINOIS
## The Religious Freedom Protection and Civil Union Act
## Effective June 1, 2011

In accordance with Illinois law, insurers are required to provide the following notice to applicants of insurance policies issued in Illinois.

The Religious Freedom Protection and Civil Union Act ("the Act") creates a legal relationship between two persons of the same or opposite sex who form a civil union. The Act provides that the parties to a civil union are entitled to the same legal obligations, responsibilities, protections and benefits that are afforded or recognized by the laws of Illinois to spouses. The law further provides that a party to a civil union shall be included in any definition or use of the terms "spouse," "family," "immediate family," "dependent," "next of kin," and other terms descriptive of spousal relationships as those terms are used throughout Illinois law. This includes the terms "marriage" or "married," or variations thereon. Insurance policies are required to provide identical benefits and protections to both civil unions and marriages. If policies of insurance provide coverage for children, the children of civil unions must also be provided coverage. The Act also requires recognition of civil unions or same sex civil unions or marriages legally entered into in other jurisdictions.

For more information regarding the Act, refer to 750 ILCS 75/1 *et seq.* Examples of the interaction between the Act and existing law can be found in the Illinois Insurance Facts, Civil Unions and Insurance Benefits document available on the Illinois Department of Insurance's website at www.insurance.illinois.gov.

### Maine

1.  The benefits under this policy are subject to reduction due to other sources of income.

    This means that your benefits will be reduced by the amount of any other benefits for loss of time provided to you or for which you are eligible as a result of the same period of disability for which you claim benefits under this policy.

    Other sources of income are plans or arrangements of coverage that provide disability-related benefits such as Worker's Compensation or other similar governmental programs or laws, or disability-related benefits received from your employer or as the result of your employment, membership or association with any group, union, association or other organization. Other sources of Income include disability-related benefits under the United States Social Security Act or an alternate governmental plan, the Railroad Retirement Act, and other similar plans or acts. Other sources of income may also include certain disability-related or retirement benefits that you receive because of your retirement unless you were receiving them prior to becoming disabled.

    What comprises other sources of income under this policy is determined by the nature of the policyholder. Therefore, we strongly urge you to **Read Your Certificate Carefully.** A full description of the plans and types of plans considered to be other sources of income under this policy will be found in the definition of "Other Income Benefits" located in the Definitions section of your certificate.

2.  The laws of the State of Maine require notification of the right to designate a third party to receive notice of cancellation, to change the designation and, policy reinstatement if the insured suffers from organic brain disease and the ground for cancellation was the insured's nonpayment of premium or other lapse or default on the part of the insured.

    Within 10 days after a request by an insured, a Third Party Notice Request Form shall be mailed or personally delivered to the insured.

### Maryland

**The group insurance policy providing coverage under this certificate was issued in a jurisdiction other than Maryland and may not provide all of the benefits required by Maryland law.**

### Montana

Conformity with Montana statutes: The provisions of this certificate conform to the minimum requirements of Montana law and control over any conflicting statutes of any state in which the insured resides on or after the effective date of this certificate.

### North Carolina

UNDER NORTH CAROLINA GENERAL STATUTE SECTION 58-50-40, NO PERSON, EMPLOYER, FINANCIAL AGENT, TRUSTEE, OR THIRD PARTY ADMINISTRATOR, WHO IS RESPONSIBLE FOR THE PAYMENT OF GROUP LIFE INSURANCE, GROUP HEALTH OR GROUP HEALTH PLAN PREMIUMS, SHALL:
1)  CAUSE THE CANCELLATION OR NONRENEWAL OF GROUP LIFE INSURANCE, GROUP HEALTH INSURANCE, HOSPITAL, MEDICAL, OR DENTAL SERVICE CORPORATION PLAN, MULTIPLE EMPLOYER WELFARE ARRANGEMENT, OR GROUP HEALTH PLAN COVERAGES AND THE CONSEQUENTIAL LOSS OF THE COVERAGES OF THE PERSON INSURED, BY WILLFULLY FAILING TO PAY THOSE PREMIUMS IN ACCORDANCE WITH THE TERMS OF THE INSURANCE OR PLAN CONTRACT; AND
2)  WILLFULLY FAIL TO DELIVER, AT LEAST 45 DAYS BEFORE THE TERMINATION OF THOSE COVERAGES, TO ALL PERSONS COVERED BY THE GROUP POLICY WRITTEN NOTICE OF THE PERSON'S INTENTION TO STOP PAYMENT OF PREMIUMS. VIOLATION OF THIS LAW IS A FELONY. ANY PERSON VIOLATING THIS LAW IS ALSO SUBJECT TO A COURT ORDER REQUIRING THE PERSON TO COMPENSATE PERSONS INSURED FOR EXPENSES OR LOSSES INCURRED AS A RESULT OF THE TERMINATION OF THE INSURANCE.

## IMPORTANT TERMINATION
## INFORMATION

**YOUR INSURANCE MAY BE CANCELLED BY THE COMPANY. PLEASE READ THE TERMINATION PROVISION IN THIS CERTIFICATE.**

**THIS CERTIFICATE OF INSURANCE PROVIDES COVERAGE UNDER A GROUP MASTER POLICY. THIS CERTIFICATE PROVIDES ALL OF THE BENEFITS MANDATED BY THE NORTH CAROLINA INSURANCE CODE, BUT YOU MAY NOT RECEIVE ALL OF THE PROTECTIONS PROVIDED BY A POLICY ISSUED IN NORTH CAROLINA AND GOVERNED BY ALL OF THE LAWS OF NORTH CAROLINA.**

### PRE-EXISTING LIMITATION
### READ CAREFULLY
**NO BENEFITS WILL BE PAYABLE UNDER THIS PLAN FOR PRE-EXISTING CONDITIONS WHICH ARE NOT COVERED UNDER THE PRIOR PLAN. PLEASE READ THE LIMITATIONS IN THIS CERTIFICATE.**

### READ YOUR CERTIFICATE CAREFULLY.

### Texas

| | |
|---|---|
| **IMPORTANT NOTICE** | **AVISO IMPORTANTE** |
| To obtain information or make a complaint: | Para obtener informacion o para someter una queja: |
| You may call The Hartford's toll-free telephone number for information or to make a complaint at: | Usted puede llamar al numero de telefono gratis de The Hartford para informacion o para someter una queja al: |
| 1-800-523-2233 | 1-800-523-2233 |
| You may also write to The Hartford at: P.O. Box 2999 Hartford, CT 06104-2999 | Usted tambien puede escribir a The Hartford: P.O. Box 2999 Hartford, CT 06104-2999 |
| You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at: | Puede comunicarse con el Departamento de Seguros de Texas para obtener informacion acerca de companias, coberturas, derechos o quejas al: |
| 1-800-252-3439 | 1-800-252-3439 |
| You may write the Texas Department of Insurance at: P.O. Box 149104 Austin, TX 78714-9410 Fax # (512) 475-1771 Web: http://www.tdi.state.tx.us E-mail: ConsumerProtection@tdi.state.tx.us | Puede escribir al Departamento de Seguros de Texas: P.O. Box 149104 Austin, TX 78714-9410 Fax # (512) 475-1771 Web: http://www.tdi.state.tx.us E-mail: ConsumerProtection@tdi.state.tx.us |
| **PREMIUM OR CLAIM DISPUTES:** Should you have a dispute concerning your premium or about a claim you should contact the agent or The Hartford first. If the dispute is not resolved, you may contact the Texas Department of Insurance. | **DISPUTAS SOBRE PRIMAS O RECLAMOS:** Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con el agente o The Hartford primero. Si no se resuelve la disputa, puede entonces comunicarse con el departamento (TDI). |
| **ATTACH THIS NOTICE TO YOUR POLICY:** This notice is for information only and does not become a part or condition of the attached document. | **UNA ESTE AVISO A SU POLIZA:** Este aviso es solo para proposito de informacion y no se convierte en parte o condicion del documento adjunto. |

**Group Disability Income Insurance**



# THE HARTFORD

## HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY
200 Hopmeadow Street
Simsbury, Connecticut 06089
(A stock insurance company)

### CERTIFICATE OF INSURANCE

**Policyholder:** UNIVERSITY OF COLORADO HOSPITAL AUTHORITY
**Policy Number:** GLT-206639
**Policy Effective Date:** October 1, 2012
**Policy Anniversary Date:** July 1, 2015

We have issued The Policy to the Policyholder. Our name, the Policyholder's name and the Policy Number are shown above. The provisions of The Policy, which are important to You, are summarized in this certificate consisting of this form and any additional forms which have been made a part of this certificate. This certificate replaces any other certificate We may have given to You earlier under The Policy. The Policy alone is the only contract under which payment will be made. Any difference between The Policy and this certificate will be settled according to the provisions of The Policy on file with Us at Our home office. The Policy may be inspected at the office of the Policyholder.

Signed for the Company

**Terence Shields,** *Secretary*          **Michael Concannon,** *Executive Vice President*

---

*A note on capitalization in this certificate:*
Capitalization of a term, not normally capitalized according to the rules of standard punctuation, indicates a word or phrase that is a defined term in The Policy or refers to a specific provision contained herein.

# TABLE OF CONTENTS

SCHEDULE OF INSURANCE..............................................................................................................9
    Cost of Coverage ........................................................................................................................9
    Eligible Class(es) For Coverage ................................................................................................9
    Eligibility Waiting Period for Coverage ......................................................................................9
    Monthly Benefit ..........................................................................................................................9
ELIGIBILITY AND ENROLLMENT ..................................................................................................10
    Eligible Persons .......................................................................................................................10
    Eligibility for Coverage.............................................................................................................10
    Enrollment................................................................................................................................10
    Evidence of Insurability............................................................................................................11
PERIOD OF COVERAGE ................................................................................................................11
    Effective Date...........................................................................................................................11
    Deferred Effective Date ...........................................................................................................11
    Changes in Coverage..............................................................................................................12
    Termination ..............................................................................................................................13
    Continuation Provisions...........................................................................................................13
    Conversion Right......................................................................................................................13
BENEFITS ........................................................................................................................................14
    Disability Benefit.......................................................................................................................14
    Mental Illness and Substance Abuse Benefits.........................................................................14
    Calculation of Monthly Benefit .................................................................................................15
    Termination of Payment...........................................................................................................15
    Family Care Credit Benefit........................................................................................................16
    Survivor Income Benefit...........................................................................................................16
    Workplace Modification Benefit................................................................................................17
EXCLUSIONS AND LIMITATIONS ..................................................................................................17
    Pre-existing Condition Limitation..............................................................................................18
GENERAL PROVISIONS..................................................................................................................18
DEFINITIONS....................................................................................................................................22
AMENDATORY RIDER......................................................................................................................26

# SCHEDULE OF INSURANCE

The Policy of long term Disability insurance provides You with long term income protection if You become Disabled from a covered injury, sickness or pregnancy. **Please refer to Your group enrollment form to see the Option that applies to You.**

**The benefits described herein are those in effect as of October 1, 2014.**

**Cost of Coverage:**
Option 1 - Depending upon the coverage for which You are enrolled, You do not contribute toward the cost of coverage under Option 1.

Option 2 - Depending upon the coverage for which You are enrolled, You must contribute toward the cost of coverage under Option 2.

Option 3 - Depending upon the coverage for which You are enrolled, You must contribute toward the cost of coverage under Option 3.

**Disclosure of Fees:**
We may reduce or adjust premiums, rates, fees and/or other expenses for programs under The Policy.

**Disclosure of Services:**
In addition to the insurance coverage, We may offer noninsurance benefits and services to Active Employees.

**Eligible Class(es) For Coverage:** All Active Benefits Eligible .5 FTE employees working at least 32 hours per week who are citizens or legal residents of the United States, its territories and protectorates; excluding physicians, vice presidents or above, temporary, leased or seasonal employees.

**Annual Enrollment Period:** as determined by Your Employer on a yearly basis.

**Eligibility Waiting Period for Coverage:**
90 day(s)

The time period(s) referenced above are continuous. The Eligibility Waiting Period for Coverage will be reduced by the period of time You were a Full-time or Part-time Active Employee with the Employer under the Prior Policy.

**Elimination Period:**
180 day(s)

**Maximum Monthly Benefit:**
$17,500

**Minimum Monthly Benefit:** The lesser of:
1) $100; or
2) 10% of the benefit based on Monthly Income Loss before the deduction of Other Income Benefits.

**Benefit Percentage:**
Option 1: 50%
Option 2: 60%
Option 3: 66 2/3%

## Maximum Duration of Benefits

### Maximum Duration of Benefits Table

| Age When Disabled | Benefits Payable |
|---|---|
| Prior to Age 63 | To Normal Retirement Age or 42 months, if greater |
| Age 63 | To Normal Retirement Age or 36 months, if greater |
| Age 64 | 30 months |
| Age 65 | 24 months |

9

|                  |           |
|------------------|-----------|
| Age 66           | 21 months |
| Age 67           | 18 months |
| Age 68           | 15 months |
| Age 69 and over  | 12 months |

Normal Retirement Age means the Social Security Normal Retirement Age as stated in the 1983 revision of the United States Social Security Act. It is determined by Your date of birth as follows:

| Year of Birth   | Normal Retirement Age |
|-----------------|-----------------------|
| 1937 or before  | 65                    |
| 1938            | 65 + 2 months         |
| 1939            | 65 + 4 months         |
| 1940            | 65 + 6 months         |
| 1941            | 65 + 8 months         |
| 1942            | 65 + 10 months        |
| 1943 thru 1954  | 66                    |
| 1955            | 66 + 2 months         |
| 1956            | 66 + 4 months         |
| 1957            | 66 + 6 months         |
| 1958            | 66 + 8 months         |
| 1959            | 66 + 10 months        |
| 1960 or after   | 67                    |

### Additional Benefit:

**Family Care Credit Benefit**
see benefit

**Survivor Income Benefit**
see benefit

**Workplace Modification Benefit**
see benefit

## ELIGIBILITY AND ENROLLMENT

**Eligible Persons:** *Who is eligible for coverage?*
All persons in the class or classes shown in the Schedule of Insurance will be considered Eligible Persons.

**Eligibility for Coverage:** *When will I become eligible?*
You will become eligible for coverage on the later of:
1) the Policy Effective Date; or
2) the date on which You complete the Eligibility Waiting Period for Coverage shown in the Schedule of Insurance, if applicable.

**Enrollment:** *How do I enroll for coverage?*
For coverage under Option 1, all eligible Active Employees will be enrolled automatically by the Employer.

For coverage under Option 2 or Option 3, You must enroll. To enroll for coverage You must:
1) complete and sign a group insurance enrollment form which is satisfactory to Us; and
2) deliver it to Your Employer.

If You do not enroll within 31 days after becoming eligible under The Policy, or if You were eligible to enroll under the Prior Policy and did not do so, and later choose to enroll:
1) You must give Us Evidence of Insurability satisfactory to Us; and
2) You may only enroll:

10

    a) during an Annual Enrollment Period designated by the Policyholder; or
    b) within 31 days of the date You have a Change in Family Status.

The dates of the Annual Enrollment Period are shown in the Schedule of Insurance.

**Evidence of Insurability:** *What is Evidence of Insurability and what happens if Evidence of Insurability is not satisfactory to Us?*
Evidence of Insurability must be satisfactory to Us and may include, but will not be limited to:
    1) a completed and signed application approved by Us;
    2) a medical examination, if requested;
    3) attending Physicians' statements; and
    4) any additional information We may require.

All Evidence of Insurability will be furnished at Our expense. We will then determine if You are insurable under The Policy.

If Your Evidence of Insurability is not satisfactory to Us:
    1) Your Monthly Benefit will equal the amount for which You were eligible without providing Evidence of Insurability, provided You enrolled within 31 days of the date You were first eligible to enroll; and
    2) You will not be covered under The Policy if You enrolled more than 31 days after the date You were first eligible to enroll.

**Change in Family Status:** *What constitutes a Change in Family Status?*
A Change in Family Status occurs when:
    1) You get married or enter a civil union or You execute a domestic partner affidavit;
    2) You and Your spouse divorce or terminate a civil union or You terminate a domestic partnership;
    3) Your child is born or You adopt or become the legal guardian of a child;
    4) Your spouse or party to a civil union or domestic partner dies;
    5) Your child is no longer financially dependent on You or dies;
    6) Your spouse or party to a civil union or domestic partner is no longer employed, which results in a loss of group insurance; or
    7) You have a change in classification from part-time to full-time or from full-time to part-time.

## PERIOD OF COVERAGE

**Effective Date:** *When does my coverage start?*
If You are not required to contribute toward The Policy's cost, Your coverage will start:
    1) for benefit amounts not requiring Evidence of Insurability, on the date You become eligible; or
    2) for benefit amounts requiring Evidence of Insurability, on the date We approve such evidence.

If You must contribute toward The Policy's cost, Your coverage will start on the earliest of:
    1) the date You become eligible, for benefit amounts not requiring Evidence of Insurability, if You enroll or have enrolled by then;
    2) the date on which You enroll, for benefit amounts not requiring Evidence of Insurability, if You do so within 31 days after the date You are eligible;
    3) the date We approve Your Evidence of Insurability, for benefit amounts requiring Evidence of Insurability; or
    4) on the January 1st following the Annual Enrollment Period if You enroll, for benefit amounts not requiring Evidence of Insurability, during an Annual Enrollment Period.

**Deferred Effective Date:** *When will my effective date for coverage or a change in my coverage be deferred?*
If You are absent from work due to:
    1) accidental bodily injury;
    2) sickness;
    3) Mental Illness;
    4) Substance Abuse; or
    5) pregnancy;
on the date Your insurance, or increase in coverage, would otherwise have become effective, Your insurance, or increase in coverage will not become effective until You are Actively at Work one full day.

**Changes in Coverage:** *Can I change my benefit options?*
You may change Your benefit option only:
1) during an Annual Enrollment Period; or
2) within 31 days of a Change in Family Status.
At such time You may decrease coverage, or increase coverage to a higher option. An increase in coverage will be subject to Your submission of an application that meets Our approval.

*When will a requested change in benefit option take effect?*
If You enroll for a change in benefit option during an Annual Enrollment Period, the change will take effect on the later of:
1) the January 1st following the Annual Enrollment Period; or
2) the date We approve Your Evidence of Insurability if You are required to submit Evidence of Insurability.

If You enroll for a change in benefit option within 31 days following a Change in Family Status, the change will take effect on the later of:
1) the date You enroll for the change; or
2) the date We approve Your Evidence of Insurability if You are required to submit Evidence of Insurability.

Any such increase in coverage is subject to the following provisions:
1) Deferred Effective Date; and
2) Pre-existing Conditions Limitations.

*Do coverage amounts change if there is a change in my class or my rate of pay?*
Your coverage may increase or decrease on the date there is a change in Your class or Pre-disability Earnings. However, no increase in coverage will be effective unless on that date You:
1) are an Active Employee; and
2) are not absent from work due to being Disabled. If You were so absent from work, the effective date of such increase will be deferred until You are Actively at Work for one full day.

No change in Your Pre-disability Earnings will become effective until the date We receive notice of the change.

*What happens if the Employer changes The Policy?*
Any increase or decrease in coverage because of a change in The Policy will become effective on the date of the change, subject to the following provisions:
1) the Deferred Effective Date provision; and
2) Pre-existing Conditions Limitations.

**Continuity From A Prior Policy:** *Is there continuity of coverage from a Prior Policy?*
If You were:
1) insured under the Prior Policy; and
2) not eligible to receive benefits under the Prior Policy;
on the day before the Policy Effective Date, the Deferred Effective Date provision will not apply.

*Is my coverage under The Policy subject to the Pre-existing Condition Limitation?*
If You become insured under The Policy on the Policy Effective Date and were covered under the Prior Policy on the day before the Policy Effective Date, the Pre-existing Conditions Limitation will end on the earliest of:
1) the Policy Effective Date, if Your coverage for the Disability was not limited by a pre-existing condition restriction under the Prior Policy; or
2) the date the restriction would have ceased to apply had the Prior Policy remained in force, if Your coverage was limited by a pre-existing condition limitation under the Prior Policy.

The amount of the Monthly Benefit payable for a Pre-existing Condition in accordance with the above paragraph will be the lesser of:
1) the Monthly Benefit which was paid by the Prior Policy; or
2) the Monthly Benefit provided by The Policy.

The Pre-existing Conditions Limitation will apply after the Policy Effective Date to the amount of a benefit increase which results from a change from the Prior Policy to The Policy, a change in benefit options, a change of class or a change in The Policy.

12

*Do I have to satisfy an Elimination Period under The Policy if I was Disabled under the Prior Policy?*
If You received monthly benefits for disability under the Prior Policy, and You returned to work as a Full-time or Part-time Active Employee before the Policy Effective Date, then, if within 6 months of Your return to work:

1) You have a recurrence of the same disability while covered under The Policy; and
2) there are no benefits available for the recurrence under the Prior Policy;

the Elimination Period, which would otherwise apply, will be waved if the recurrence would have been covered without any further elimination period under the Prior Policy.

**Termination:** *When will my coverage end?*
Your coverage will end on the earliest of the following:

1) the end of the month following the date The Policy terminates;
2) the end of the month following the date The Policy no longer insures Your class;
3) the end of the month following the date premium payment is due but not paid;
4) the last day of the period for which You make any required premium contribution;
5) the end of the month following the date Your Employer terminates Your employment; or
6) the end of the month following the date You cease to be a Full-time or Part-time Active Employee in an eligible class for any reason;

unless continued in accordance with any of the Continuation Provisions.

**Continuation Provisions:** *Can my coverage be continued beyond the date it would otherwise terminate?*
Coverage can be continued by Your Employer beyond a date shown in the Termination provision, if Your Employer provides a plan of continuation which applies to all employees the same way. Continued coverage:

1) is subject to any reductions in The Policy;
2) is subject to payment of premium by the Employer; and
3) terminates if:
    a) The Policy terminates; or
    b) coverage for Your class terminates.

In any event, Your benefit level, or the amount of earnings upon which Your benefits may be based, will be that in effect on the day before Your coverage was continued. Coverage may be continued in accordance with the above restrictions and as described below:

Family and Medical Leave: If You are granted a leave of absence, in writing, according to the Family and Medical Leave Act of 1993, or other applicable state or local law, Your coverage may be continued for up to 12 weeks, or 26 weeks if You qualify for Family Military Leave, or longer if required by other applicable law, following the date Your leave commenced. If the leave terminates prior to the agreed upon date, this continuation will cease immediately.

**Coverage while Disabled:** *Does my insurance continue while I am Disabled and no longer an Active Employee?*
If You are Disabled and You cease to be an Active Employee, Your insurance will be continued:

1) during the Elimination Period while You remain Disabled by the same Disability; and
2) after the Elimination Period for as long as You are entitled to benefits under The Policy.

**Waiver of Premium:** *Am I required to pay premiums while I am Disabled?*
No premium will be due for You:

1) after the Elimination Period; and
2) for as long as benefits are payable.

**Extension of Benefits for Disability:** *Do my benefits continue if The Policy terminates?*
If You are entitled to benefits while Disabled and The Policy terminates, benefits:

1) will continue as long as You remain Disabled by the same Disability; but
2) will not be provided beyond the date We would have ceased to pay benefits had the insurance remained in force.

Termination of The Policy for any reason will have no effect on Our liability under this provision.

**Conversion Right:** *If my coverage under The Policy stops, do I have a right to conversion?*
If Your insurance terminates because:

1) Your employment ends for a reason other than Your retirement; or
2) You are no longer in an eligible class;

and if:

1) You have been continuously insured for at least 12 consecutive month(s) under The Policy or under both The Policy and the Prior Policy;

13

    2)   a Disability is not preventing You from performing duties of Your Occupation;
    3)   The Policy has not terminated; and
    4)   You are not eligible or covered for similar benefits under another group policy;
then You are eligible to enroll for personal insurance under another group policy called the group long term disability conversion policy.

*How do I convert my coverage?*
To obtain coverage under the group long term disability conversion policy, You must:
    1)   send Us a written enrollment request; and
    2)   pay the required premium and enrollment fee for the conversion policy;
within 31 days of the termination of Your insurance.

If You meet the preceding conditions, We will issue You a certificate of insurance under the group long term disability conversion policy. Such coverage will:
    1)   be issued without Evidence of Insurability;
    2)   be on one of the forms then being issued by Us for conversion purposes; and
    3)   be effective on the day following the date Your insurance under The Policy terminates.

The coverage available under the conversion policy may differ from The Policy. We will determine the terms of the group long term disability conversion policy, including:
    1)   the type and amount of coverage provided; and
    2)   the premium payable;
based on the kinds of insurance provided by the group long term disability conversion policy at the time such enrollment request is made.

# BENEFITS

**Disability Benefit:** *What are my Disability Benefits under The Policy?*
We will pay You a Monthly Benefit if You:
    1)   become Disabled while insured under The Policy;
    2)   are Disabled throughout the Elimination Period;
    3)   remain Disabled beyond the Elimination Period; and
    4)   submit Proof of Loss to Us.
Benefits accrue as of the first day after the Elimination Period and are paid monthly. However, benefits will not exceed the Maximum Duration of Benefits.

**Mental Illness and Substance Abuse Benefits:** *Are benefits limited for Mental Illness or Substance Abuse?*
If You are Disabled because of:
    1)   Mental Illness that results from any cause;
    2)   any condition that may result from Mental Illness;
    3)   alcoholism; or
    4)   the non-medical use of narcotics, sedatives, stimulants, hallucinogens, or any other such substance;
then, subject to all other provisions of The Policy, We will limit the Maximum Duration of Benefits.

Benefits will be payable:
    1)   for as long as You are confined in a hospital or other place licensed to provide medical care for the disabling condition; or
    2)   if not confined, or after You are discharged and still Disabled, for a total of 24 months for all such disabilities during Your lifetime.

**Recurrent Disability:** *What happens if I Recover but become Disabled again?*
Periods of Recovery during the Elimination Period will not interrupt the Elimination Period, if the number of days You return to work as an Active Employee are less than one-half (1/2) the number of days of Your Elimination Period.

Any day within such period of Recovery, will not count toward the Elimination Period.

After the Elimination Period, if You return to work as an Active Employee and then become Disabled and such Disability is:

1) due to the same cause; or
2) due to a related cause; and
3) within 6 months of the return to work;

the Period of Disability prior to Your return to work and the recurrent Disability will be considered one Period of Disability, provided The Policy remains in force.

If You return to work as an Active Employee for 6 months or more, any recurrence of a Disability will be treated as a new Disability. The new Disability is subject to a new Elimination Period and a new Maximum Duration of Benefits.

**Period of Disability** means a continuous length of time during which You are Disabled under The Policy.

**Recover or Recovery** means that You are no longer Disabled and have returned to work with the Employer and premiums are being paid for You.

**Calculation of Monthly Benefit: Return to Work Incentive:** *How are my Disability benefits calculated?*
If You remain Disabled after the Elimination Period, but work while You are Disabled, We will determine Your Monthly Benefit for a period of up to 12 consecutive months as follows:
1) multiply Your Pre-disability Earnings by the Benefit Percentage;
2) compare the result with the Maximum Benefit; and
3) from the lesser amount, deduct Other Income Benefits.

The result is Your Monthly Benefit. Current Monthly Earnings will not be used to reduce Your Monthly Benefit. However, if the sum of Your Monthly Benefit and Your Current Monthly Earnings exceeds 100% of Your Pre-disability Earnings, We will reduce Your Monthly Benefit by the amount of excess.

The 12 consecutive month period will start on the last to occur of:
1) the day You first start work; or
2) the end of the Elimination Period.

If You are Disabled and not receiving benefits under the Return to Work Incentive, We will calculate Your Monthly Benefit as follows:
1) multiply Your Monthly Income Loss by the Benefit Percentage;
2) compare the result with the Maximum Benefit; and
3) from the lesser amount, deduct Other Income Benefits.

The result is Your Monthly Benefit.

**Calculation of Monthly Benefit:** *What happens if the sum of my Monthly Benefit, Current Monthly Earnings, and Other Income Benefits exceeds 100% of my Pre-disability Earnings?*
If the sum of Your Monthly Benefit, Current Monthly Earnings, and Other Income Benefits exceeds 100% of Your Pre-disability Earnings, We will reduce Your Monthly Benefit by the amount of the excess. However, Your Monthly Benefit will not be less than the Minimum Monthly Benefit.

If an overpayment occurs, We may recover all or any portion of the overpayment, in accordance with the Overpayment Recovery provision.

**Minimum Monthly Benefit:** *Is there a Minimum Monthly Benefit?*
Your Monthly Benefit will not be less than the Minimum Monthly Benefit shown in the Schedule of Insurance.

**Partial Month Payment:** *How is the benefit calculated for a period of less than a month?*
If a Monthly Benefit is payable for a period of less than a month, We will pay 1/30 of the Monthly Benefit for each day You were Disabled.

**Termination of Payment:** *When will my benefit payments end?*
Benefit payments will stop on the earliest of:
1) the date You are no longer Disabled;
2) the date You fail to furnish Proof of Loss;
3) the date You are no longer under the Regular Care of a Physician;
4) the date You refuse Our request that You submit to an examination by a Physician or other qualified medical professional;
5) the date of Your death;

6)  the date You refuse to receive recommended treatment that is generally acknowledged by Physicians to cure, correct or limit the disabling condition;
7)  the last day benefits are payable according to the Maximum Duration of Benefits Table;
8)  the date Your Current Monthly Earnings:
    a)  are equal to or greater than 80% of Your Indexed Pre-disability Earnings if You are receiving benefits for being Disabled from Your Occupation; or
    b)  are greater than the lesser of the product of Your Indexed Pre-disability Earnings and the Benefit Percentage or the Maximum Monthly Benefit if You are receiving benefits for being Disabled from Any Occupation;
9)  the date no further benefits are payable under any provision in The Policy that limits benefit duration; or
10) the date You refuse to participate in a Rehabilitation program, or refuse to cooperate with or try:
    a)  modifications made to the work site or job process to accommodate Your identified medical limitations to enable You to perform the Essential Duties of Your Occupation;
    b)  adaptive equipment or devices designed to accommodate Your identified medical limitations to enable You to perform the Essential Duties of Your Occupation;
    c)  modifications made to the work site or job process to accommodate Your identified medical limitations to enable You to perform the Essential Duties of Any Occupation, if You were receiving benefits for being disabled from Any Occupation; or
    d)  adaptive equipment or devices designed to accommodate Your identified medical limitations to enable You to perform the Essential Duties of Any Occupation, if You were receiving benefits for being disabled from Any Occupation;
    provided a qualified Physician or other qualified medical professional agrees that such modifications, Rehabilitation program or adaptive equipment accommodate Your medical limitation.

**Family Care Credit Benefit:** *What if I must incur expenses for Family Care Services in order to participate in a Rehabilitation program?*
If You are working as part of a program of Rehabilitation, We will, for the purpose of calculating Your benefit, deduct the cost of Family Care from earnings received from work as a part of a program of Rehabilitation, subject to the following limitations:
1)  Family Care means the care or supervision of:
    a)  Your children under age 13; or
    b)  a member of Your household who is mentally or physically handicapped and dependent upon You for support and maintenance;
2)  the maximum monthly deduction allowed for each qualifying child or family member is:
    a)  $350 during the first 12 months of Rehabilitation; and
    b)  $175 thereafter;
    but in no event may the deduction exceed the amount of Your monthly earnings;
3)  Family Care Credits may not exceed a total of $2,500 during a calendar year;
4)  the deduction will be reduced proportionally for periods of less than a month;
5)  the charges for Family Care must be documented by a receipt from the caregiver;
6)  the credit will cease on the first to occur of the following:
    a)  You are no longer in a Rehabilitation program; or
    b)  Family Care Credits for 24 months have been deducted during Your Disability; and
7)  no Family Care provided by someone Related to the family member receiving the care will be eligible as a deduction under this provision.

Your Current Monthly Earnings after the deduction of Your Family Care Credit will be used to determine Your Monthly Income Loss. In no event will You be eligible to receive a Monthly Benefit under The Policy if Your Current Monthly Earnings before the deduction of the Family Care Credit exceed 80% of Your Indexed Pre-disability Earnings.

**Survivor Income Benefit:** *Will my survivors receive a benefit if I die while receiving Disability Benefits?*
If You were receiving a Monthly Benefit at the time of Your death, We will pay a Survivor Income Benefit, when We receive proof satisfactory to Us:
1)  of Your death; and
2)  that the person claiming the benefit is entitled to it.
We must receive the satisfactory proof for Survivor Income Benefits within 1 year of the date of Your death.

The Survivor Income Benefit will only be paid:
1)  to Your Surviving Spouse; or
2)  if no Surviving Spouse, in equal shares to Your Surviving Children.
If there is no Surviving Spouse or Surviving Children, then no benefit will be paid.

However, We will first apply the Survivor Income Benefit to any overpayment which may exist on Your claim.

If a minor child is entitled to benefits, We may, at Our option, make benefit payments to the person caring for and supporting the child until a legal guardian is appointed.

The Survivor Income Benefit is calculated as 3 times the lesser of:
1) Your Monthly Income Loss multiplied by the Benefit Percentage in effect on the date of Your death; or
2) The Maximum Monthly Benefit.

**Surviving Spouse** means Your wife or husband who was not legally separated or divorced from You when You died. Spouse will include Your partner in a civil union.
"Spouse" will include Your domestic partner provided You:
1) have executed a domestic partner affidavit satisfactory to Us, establishing that You and Your partner are domestic partners for purposes of The Policy; or
2) have registered as domestic partners with a government agency or office where such registration is available and provide proof of such registration unless requiring proof is prohibited by law.
You will continue to be considered domestic partners provided You continue to meet the requirements described in the domestic partner affidavit or required by law.

**Surviving Children** means Your unmarried children, step children, legally adopted children who, on the date You die, are primarily dependent on You for support and maintenance and who are under age 25.

The term Surviving Children will also include any other children related to You by blood or marriage or civil union or domestic partnership and who:
1) lived with You in a regular parent-child relationship; and
2) were eligible to be claimed as dependents on Your federal income tax return for the last tax year prior to Your death.

**Workplace Modification Benefit:** *Will the Rehabilitation program provide for modifications to my workplace to accommodate my return to work?*
We will reimburse Your Employer for the expense of reasonable Workplace Modifications to accommodate Your Disability and enable You to return to work as an Active Employee. You qualify for this benefit if:
1) Your Disability is covered by The Policy;
2) the Employer agrees to make modifications to the workplace in order to reasonably accommodate Your return to work and the performance of the Essential Duties of Your job; and
3) We approve, in writing, any proposed Workplace Modifications.

Benefits paid for such Workplace Modification shall not exceed the amount equal to the amount of the Maximum Monthly Benefit.

We have the right, at Our expense, to have You examined or evaluated by:
1) a Physician or other health care professional; or
2) a vocational expert or rehabilitation specialist;
of Our choice so that We may evaluate the appropriateness of any proposed modification.

We will reimburse the Employer's costs for approved Workplace Modifications after:
1) the proposed modifications made on Your behalf are complete;
2) We have been provided written proof of the expenses incurred to provide such modification; and
3) You have returned to work as an Active Employee.

**Workplace Modification** means change in Your work environment, or in the way a job is performed, to allow You to perform, while Disabled, the Essential Duties of Your job. Payment of this benefit will not reduce or deny any benefit You are eligible to receive under the terms of The Policy.

## EXCLUSIONS AND LIMITATIONS

**Exclusions:** *What Disabilities are not covered?*

17

The Policy does not cover, and We will not pay a benefit for, any Disability:
1) unless You are under the Regular Care of a Physician;
2) that is caused or contributed to by war or act of war, whether declared or not;
3) caused by Your commission of or attempt to commit a felony;
4) caused or contributed to by Your being engaged in an illegal occupation; or
5) caused or contributed to by an intentionally self-inflicted injury.

If You are receiving or are eligible for benefits for a Disability under a prior disability plan that:
1) was sponsored by Your Employer; and
2) was terminated before the Effective Date of The Policy;
no benefits will be payable for the Disability under The Policy.

**Pre-existing Condition Limitation:** *Are benefits limited for Pre-existing Conditions?*
We will not pay any benefit, or any increase in benefits, under The Policy for any Disability that results from, or is caused or contributed to by, a Pre-existing Condition, unless, at the time You become Disabled:
1) You have not received Medical Care for the condition for 3 consecutive month(s) while insured under The Policy; or
2) You have been continuously insured under The Policy for 12 consecutive month(s).

**Pre-existing Condition means:**
1) any accidental bodily injury, sickness, Mental Illness, pregnancy, or episode of Substance Abuse; or
2) any manifestations, symptoms, findings, or aggravations related to or resulting from such accidental bodily injury, sickness, Mental Illness, pregnancy, or Substance Abuse;
for which You received Medical Care during the 3 consecutive month(s) period that ends the day before:
1) Your effective date of coverage; or
2) the effective date of a Change in Coverage.

**Medical Care** is received when a Physician or other health care provider:
1) is consulted or gives medical advice; or
2) recommends, prescribes, or provides Treatment.

**Treatment** includes but is not limited to:
1) medical examinations, tests, attendance or observation; and
2) use of drugs, medicines, medical services, supplies or equipment.

# GENERAL PROVISIONS

**Notice of Claim:** *When should I notify the Company of a claim?*
You must give Us written notice of a claim within 30 days after Disability or loss occurs. Failure to give notice within such time shall not invalidate or reduce any claim if it shall be shown not to have been reasonably possible to give such notice and that notice was given as soon as was reasonably possible. Such notice must include Your name, Your address and the Policy Number.

**Claim Forms:** *Are special forms required to file a claim?*
We will send forms to You to provide Proof of Loss, within 15 days of receiving a Notice of Claim. If We do not send the forms within 15 days, You may submit any other written proof which fully describes the nature and extent of Your claim.

**Proof of Loss:** *What is Proof of Loss?*
Proof of Loss may include but is not limited to the following:
1) documentation of:
   a) the date Your Disability began;
   b) the cause of Your Disability;
   c) the prognosis of Your Disability;
   d) Your Pre-disability Earnings, Current Monthly Earnings or any income, including but not limited to copies of Your filed and signed federal and state tax returns; and
   e) evidence that You are under the Regular Care of a Physician;
2) any and all medical information, including x-ray films and photocopies of medical records, including histories, physical, mental or diagnostic examinations and treatment notes;

18

3) the names and addresses of all:
   a) Physicians or other qualified medical professionals You have consulted;
   b) hospitals or other medical facilities in which You have been treated; and
   c) pharmacies which have filled Your prescriptions within the past three years;
4) Your signed authorization for Us to obtain and release:
   a) medical, employment and financial information; and
   b) any other information We may reasonably require;
5) Your signed statement identifying all Other Income Benefits; and
6) proof that You and Your dependents have applied for all Other Income Benefits which are available.

You will not be required to claim any retirement benefits which You may only get on a reduced basis. All proof submitted must be satisfactory to Us. If We receive proof that is unsatisfactory, and the claim is not for loss of time for disability, We will notify the appropriate person(s) in writing within 30 calendar days.

**Additional Proof of Loss:** *What Additional Proof of Loss is the Company entitled to?*
To assist Us in determining if You are Disabled, or to determine if You meet any other term or condition of The Policy, We have the right to require You to:
   1) meet and interview with Our representative; and
   2) be examined by a Physician, vocational expert, functional expert, or other medical or vocational professional of Our choice.

Any such interview, meeting or examination will be:
   1) at Our expense; and
   2) as reasonably required by Us.

Your Additional Proof of Loss must be satisfactory to Us. If We receive proof that is unsatisfactory, and the claim is not for loss of time for disability, We will notify the appropriate person(s) in writing within 30 calendar days. Unless We determine You have a valid reason for refusal, We may deny, suspend or terminate Your benefits if You refuse to be examined or meet to be interviewed by Our representative.

**Sending Proof of Loss:** *When must Proof of Loss be given?*
Written Proof of Loss must be sent to Us within 90 days following the completion of the Elimination Period. If proof is not given by the time it is due, it will not affect the claim if:
   1) it was not reasonably possible to give proof within the required time; and
   2) proof is given as soon as reasonably possible; but
   3) not later than 1 year after it is due, unless You are not legally competent.

We may request Proof of Loss throughout Your Disability, as reasonably required. In such cases, We must receive the proof within 30 day(s) of the request.

**Claim Payment:** *When are benefit payments issued?*
When We determine that You;
   1) are Disabled; and
   2) eligible to receive benefits;

We will pay accrued benefits at the end of each month that You are Disabled. Payments, other than for loss of time for disability, will begin no later than 30 calendar days after We determine benefits are payable. We may, at Our option, make an advance benefit payment based on Our estimated duration of Your Disability. If any payment is due after a claim is terminated, it will be paid as soon as Proof of Loss satisfactory to Us is received.

Benefits may be subject to interest payments as required by applicable law.

**Claims to be Paid:** *To whom will benefits for my claim be paid?*
All payments are payable to You. Any payments owed at Your death may be paid to Your estate. If any payment is owed to:
   1) Your estate;
   2) a person who is a minor; or
   3) a person who is not legally competent;

then We may pay up to $1,000 to a person who is Related to You and who, at Our sole discretion, is entitled to it. Any such payment shall fulfill Our responsibility for the amount paid.

**Claim Denial:** *What notification will I receive if my claim is denied?*
If a claim for benefits is wholly or partly denied, You will be furnished with written notification of the decision. If a claim is not for loss of time for disability, We will provide such notification within 30 calendar days. This written notification will:
   1) give the specific reason(s) for the denial;

19

2) make specific reference to The Policy provisions on which the denial is based;
3) provide a description of any additional information necessary to perfect a claim and an explanation of why it is necessary; and
4) provide an explanation of the review procedure.

In addition, if a claim for benefits is wholly or partially denied and all administrative remedies have been exhausted, You are entitled to pursue such claim anew, from the beginning, in a court with jurisdiction and to a trial by jury.

**Claim Appeal:** *What recourse do I have if my claim is denied?*
On any claim, You or Your representative may appeal to Us for a full and fair review. To do so You:
1) must request a review upon written application within:
   a) 180 days of receipt of claim denial if the claim requires Us to make a determination of disability; or
   b) 60 days of receipt of claim denial if the claim does not require Us to make a determination of disability; and
2) may request copies of all documents, records, and other information relevant to Your claim; and
3) may submit written comments, documents, records and other information relating to Your claim.

We will respond to You in writing with Our final decision on the claim.

In addition, if a claim for benefits is wholly or partially denied and all administrative remedies have been exhausted, You are entitled to pursue such claim anew, from the beginning, in a court with jurisdiction and to a trial by jury.

**Social Security:** *When must I apply for Social Security Benefits?*
You must apply for Social Security disability benefits when the length of Your Disability meets the minimum duration required to apply for such benefits. You must apply within 45 days from the date of Our request. If the Social Security Administration denies Your eligibility for benefits, You will be required:
1) to follow the process established by the Social Security Administration to reconsider the denial; and
2) if denied again, to request a hearing before an Administrative Law Judge of the Office of Hearing and Appeals.

**Benefit Estimates:** *How does the Company estimate Disability benefits under the United States Social Security Act?*
We reserve the right to reduce Your Monthly Benefit by estimating the Social Security disability benefits You may be eligible to receive.

When We determine that You may be eligible for benefits, We may estimate the amount of these benefits. We may reduce Your Monthly Benefit by the estimated amount.
Your Monthly Benefit will not be reduced by estimated Social Security disability benefits if:
1) You apply for Social Security disability benefits and pursue all required appeals in accordance with the Social Security provision; and
2) You have signed a form authorizing the Social Security Administration to release information about awards directly to Us; and
3) You have signed and returned Our reimbursement agreement, which confirms that You agree to repay all overpayments.

If We have reduced Your Monthly Benefit by an estimated amount and:
1) You are later awarded Social Security disability benefits, We will adjust Your Monthly Benefit when We receive proof of the amount awarded, and determine if it was higher or lower than Our estimate; or
2) Your application for Social Security disability benefits has been denied, We will adjust Your Monthly Benefit when You provide Us proof of final denial from which You cannot appeal from an Administrative Law Judge of the Office of Hearing and Appeals.

If Your Social Security benefits were lower than We estimated, and We owe You a refund, We will make such refund in a lump sum. If Your Social Security benefits were higher than We estimated, and if Your Monthly Benefit has been overpaid, You must make a lump sum refund to Us equal to all overpayments, in accordance with the Overpayment Recovery provision.

**Overpayment:** *When does an overpayment occur?*
An overpayment occurs:
1) when We determine that the total amount We have paid in benefits is more than the amount that was due to You under The Policy; or
2) when payment is made by Us that should have been made under another group policy.

This includes, but is not limited to, overpayments resulting from:
1) retroactive awards received from sources listed in the Other Income Benefits definition;
2) failure to report, or late notification to Us of any Other Income Benefit(s) or earned income;
3) misstatement;
4) fraud; or
5) any error We may make.

**Overpayment Recovery:** *How does the Company exercise the right to recover overpayments?*
We have the right to recover from You any amount that We determine to be an overpayment. You have the obligation to refund to Us any such amount. Our rights and Your obligations in this regard may also be set forth in the reimbursement agreement You will be required to sign when You become eligible for benefits under The Policy.

If benefits are overpaid on any claim, You must reimburse Us within 30 days.

If reimbursement is not made in a timely manner, We have the right to:
1) recover such overpayments from:
   a) You;
   b) any other organization;
   c) any other insurance company;
   d) any other person to or for whom payment was made; and
   e) Your estate;
2) reduce or offset against any future benefits payable to You or Your survivors, including the Minimum Monthly Benefit, until full reimbursement is made. Payments may continue when the overpayment has been recovered;
3) refer Your unpaid balance to a collection agency; and
4) pursue and enforce all legal and equitable rights in court.

**Subrogation:** *What are the Company's subrogation rights?*
If You:
1) suffer a Disability because of the act or omission of a Third Party;
2) become entitled to and are paid benefits under The Policy in compensation for lost wages; and
3) do not initiate legal action for the recovery of such benefits from the Third Party in a reasonable period of time;
then We will be subrogated to any rights You may have against the Third Party and may, at Our option, bring legal action against the Third Party to recover any payments made by Us in connection with the Disability.

**Third Party** as used in this provision, means any person or legal entity whose act or omission, in full or in part, causes You to suffer a Disability for which benefits are paid or payable under The Policy.

**Reimbursement:** *What are the Company's Reimbursement Rights?*
We have the right to request to be reimbursed for any benefit payments made or required to be made under The Policy for a Disability for which You recover payment from a Third Party.

If You recover payment from a Third Party as:
   a) a legal judgment;
   b) an arbitration award; or
   c) a settlement or otherwise;
You must reimburse Us for the lesser of:
   a) the amount of payment made or required to be made by Us; or
   b) the amount recovered from the Third Party less any reasonable legal fees associated with the recovery.

**Third Party** as used in this provision, means any person or legal entity whose act or omission, in full or in part, causes You to suffer a Disability for which benefits are paid or payable under The Policy.

**Legal Actions:** *When can legal action be taken against Us?*
Legal action cannot be taken against Us:
1) sooner than 60 days after the date Proof of Loss is given; or
2) more than 3 years after the date Proof of Loss is required to be given according to the terms of The Policy.

**Insurance Fraud:** *How does the Company deal with fraud?*
Insurance Fraud occurs when You and/or Your Employer provide Us with false information or file a claim for benefits that contains any false, incomplete or misleading information with the intent to injure, defraud or deceive Us. It is a crime if

You and/or Your Employer commit Insurance Fraud. We will use all means available to Us to detect, investigate, deter and prosecute those who commit Insurance Fraud. We will pursue all available legal remedies if You and/or Your Employer perpetrate Insurance Fraud.

**Misstatements:** *What happens if facts are misstated?*

If material facts about You were not stated accurately:

    1) Your premium may be adjusted; and

    2) the true facts will be used to determine if, and for what amount, coverage should have been in force.

No statement, except fraudulent misstatements, made by You relating to Your insurability will be used to contest the Insurance for which the statement was made after the Insurance has been in force for two years during Your lifetime. In order to be used, the statement must be in writing and signed by You.

All statements made by the Policyholder, the Employer or You under The Policy will be deemed representations and not warranties. No statement made to affect this insurance will be used in any contest unless it is in writing and a copy of it is given to the person who made it, or to his or her beneficiary or Your representative.

**Physical Examinations and Autopsy:** *Will I be examined during the course of my claim?*

While a claim is pending We have the right at Our expense:

    1) to have the person who has a loss examined by a Physician when and as often as reasonably necessary; and

    2) to make an autopsy in case of death where it is not forbidden by law.

## DEFINITIONS

**Actively at Work** means at work with the Employer on a day that is one of the Employer's scheduled workdays. On that day, You must be performing for wage or profit all of the regular duties of Your Occupation:

    1) in the usual way; and

    2) for Your usual number of hours.

We will consider You Actively at Work on a day that is not a scheduled work day only if You were Actively at Work on the preceding scheduled work day.

**Active Employee** means an employee who works for the Employer on a regular basis in the usual course of the Employer's business. This must be at least the number of hours shown in the Schedule of Insurance.

**Any Occupation** means any occupation for which You are qualified by education, training or experience, and that has an earnings potential greater than the lesser of:

    1) the product of Your Indexed Pre-disability Earnings and the Benefit Percentage; or

    2) the Maximum Monthly Benefit.

**Current Monthly Earnings** means monthly earnings You receive from:

    1) Your Employer; and

    2) other employment;

while You are Disabled.

However, if the other employment is a job You held in addition to Your job with Your Employer, then during any period that You are entitled to benefits for being Disabled from Your Occupation, only the portion of Your earnings that exceeds Your average earnings from the other employer over the 6 month period just before You became Disabled will count as Current Monthly Earnings.

Current Monthly Earnings also includes the pay You could have received for another job or a modified job if:

    1) such job was offered to You by Your Employer, or another employer, and You refused the offer; and

    2) the requirements of the position were consistent with:

        a) Your education, training and experience; and

        b) Your capabilities as medically substantiated by Your Physician.

**Disability or Disabled** means You are prevented from performing one or more of the Essential Duties of:

    1) Your Occupation during the Elimination Period;

22

2) Your Occupation, for the 2 year(s) following the Elimination Period, and as a result Your Current Monthly Earnings are less than 80% of Your Indexed Pre-disability Earnings; and
3) after that, Any Occupation.

If at the end of the Elimination Period, You are prevented from performing one or more of the Essential Duties of Your Occupation, but Your Current Monthly Earnings are equal to or greater than 80% of Your Pre-disability Earnings, Your Elimination Period will be extended for a total period of 12 months from the original date of Disability, or until such time as Your Current Monthly Earnings are less than 80% of Your Pre-disability Earnings, whichever occurs first. For the purposes of extending Your Elimination Period, Your Current Monthly Earnings will not include the pay You could have received for another job or a modified job if such job was offered to You by Your Employer, or another employer, and You refused the offer.

Your Disability must result from:
1) accidental bodily injury;
2) sickness;
3) Mental Illness;
4) Substance Abuse; or
5) pregnancy.
Your failure to pass a physical examination required to maintain a license to perform the duties of Your Occupation, alone, does not mean that You are Disabled.

**Elimination Period** means the longer of the number of consecutive days at the beginning of any one period of Disability which must elapse before benefits are payable or the expiration of any Employer sponsored short term Disability benefits or salary continuation program, excluding benefits required by state law.

**Employer** means the Policyholder.

**Essential Duty** means a duty that:
1) is substantial, not incidental;
2) is fundamental or inherent to the occupation; and
3) cannot be reasonably omitted or changed.
Your ability to work the number of hours in Your regularly scheduled workweek is an Essential Duty.

**Indexed Pre-disability Earnings** means Your Pre-disability Earnings adjusted annually by adding the lesser of:
1) 10%; or
2) the percentage change in the Consumer Price Index (CPI-W).

The percentage change in the CPI-W means the difference between the current year's CPI-W as of July 31, and the prior year's CPI-W as of July 31, divided by the prior year's CPI-W. The adjustment is made January 1st each year after You have been Disabled for 12 consecutive month(s), provided You are receiving benefits at the time the adjustment is made.

The term Consumer Price Index (CPI-W) means the index for Urban Wage Earners and Clerical Workers published by the United States Department of Labor. It measures on a periodic (usually monthly) basis the change in the cost of typical urban wage earners' and clerical workers' purchase of certain goods and services. If the index is discontinued or changed, We may use another nationally published index that is comparable to the CPI-W.

**Mental Illness** means a mental disorder as listed in the current version of the Diagnostic and Statistical Manual of Mental Disorders, published by the American Psychiatric Association. A Mental Illness may be caused by biological factors or result in physical symptoms or manifestations.

For the purpose of The Policy, Mental Illness does not include the following mental disorders outlined in the Diagnostic and Statistical Manual of Mental Disorders:
1) Mental Retardation;
2) Pervasive Developmental Disorders;
3) Motor Skills Disorder;
4) Substance-Related Disorders;
5) Delirium, Dementia, and Amnesic and Other Cognitive Disorders; or
6) Narcolepsy and Sleep Disorders related to a General Medical Condition.

**Monthly Benefit** means a monthly sum payable to You while You are Disabled, subject to the terms of The Policy.

**Monthly Income Loss** means Your Pre-disability Earnings minus Your Current Monthly Earnings.

**Other Income Benefits** means the amount of any benefit for loss of income, provided to You, as a result of the period of Disability for which You are claiming benefits under The Policy. This includes any such benefits for which You are eligible or that are paid to You, or to a third party on Your behalf, pursuant to any:

1) temporary, permanent disability, or impairment benefits under a Workers' Compensation Law, the Jones Act, occupational disease law, similar law or substitutes or exchanges for such benefits;
2) governmental law or program that provides disability or unemployment benefits as a result of Your job with Your Employer;
3) plan or arrangement of coverage, whether insured or not, which is received from Your Employer as a result of employment by or association with Your Employer or which is the result of membership in or association with any group, association, union or other organization;
4) mandatory "no-fault" automobile insurance plan;
5) disability benefits under:
   a) the United States Social Security Act or alternative plan offered by a state or municipal government;
   b) the Railroad Retirement Act;
   c) the Canada Pension Plan, the Canada Old Age Security Act, the Quebec Pension Plan or any provincial pension or disability plan; or
   d) similar plan or act;
   that You are eligible to receive because of Your Disability; or
6) disability benefit from the Department of Veterans Affairs, or any other foreign or domestic governmental agency:
   a) that begins after You become Disabled; or
   b) that You were receiving before becoming Disabled, but only as to the amount of any increase in the benefit attributed to Your Disability.

Other Income Benefits also means any payments that are made to You, or to a third party on Your behalf, pursuant to any:

1) disability benefit under Your Employer's Retirement Plan;
2) temporary, permanent disability or impairment benefits under a Workers' Compensation Law, the Jones Act, occupational disease law, similar law or substitutes or exchanges for such benefits;
3) portion of a judgment or settlement, minus associated costs, of a claim or lawsuit that represents or compensates for Your loss of earnings; or
4) retirement benefit from a Retirement Plan that is wholly or partially funded by employer contributions, unless:
   a) You were receiving it prior to becoming Disabled; or
   b) You immediately transfer the payment to another plan qualified by the United States Internal Revenue Service for the funding of a future retirement;
   (Other Income Benefits will not include the portion, if any, of such retirement benefit that was funded by Your after-tax contributions.).

If You are paid Other Income Benefits in a lump sum or settlement, You must provide proof satisfactory to Us of:

1) the amount attributed to loss of income; and
2) the period of time covered by the lump sum or settlement.

We will pro-rate the lump sum or settlement over this period of time.  If You cannot or do not provide this information, We will assume the entire sum to be for loss of income, and the time period to be 60 month(s).  We may make a retroactive allocation of any retroactive Other Income Benefit.  A retroactive allocation may result in an overpayment of Your claim.

The amount of any increase in Other Income Benefits will not be included as Other Income Benefits if such increase:

1) takes effect after the date benefits become payable under The Policy; and
2) is a general increase which applies to all persons who are entitled to such benefits.

**Physician** means a person who is:

1) a doctor of medicine, osteopathy, psychology or other legally qualified practitioner of a healing art that We recognize or are required by law to recognize;
2) licensed to practice in the jurisdiction where care is being given;
3) practicing within the scope of that license; and
4) not You or Related to You by blood or marriage.

**Pre-disability Earnings** means Your regular monthly rate of pay not counting bonuses, commissions and tips and tokens, overtime pay or any other fringe benefits or extra compensation, in effect on the last day You were Actively at Work before You became Disabled.

**Prior Policy** means the long term disability insurance carried by the Employer on the day before the Policy Effective Date.

**Regular Care of a Physician** means that You are being treated by a Physician:
1) whose medical training and clinical experience are suitable to treat Your disabling condition; and
2) whose treatment is:
    a) consistent with the diagnosis of the disabling condition;
    b) according to guidelines established by medical, research, and rehabilitative organizations; and
    c) administered as often as needed;
    to achieve the maximum medical improvement.

**Rehabilitation** means a process of Our working together with You in order for Us to plan, adapt, and put into use options and services to meet Your return to work needs. A Rehabilitation program may include, when We consider it to be appropriate, any necessary and feasible:
1) vocational testing;
2) vocational training;
3) alternative treatment plans such as:
    a) support groups;
    b) physical therapy;
    c) occupational therapy; or
    d) speech therapy;
4) work-place modification to the extent not otherwise provided;
5) job placement;
6) transitional work; and
7) similar services.

**Related** means Your spouse, or someone in a similar relationship in law to You, or other adult living with You, or Your sibling, parent, step-parent, grandparent, aunt, uncle, niece, nephew, son, daughter, or grandchild.

**Retirement Plan** means a defined benefit or defined contribution plan that provides benefits for Your retirement and which is not funded wholly by Your contributions. It does not include:
1) a profit sharing plan;
2) thrift, savings or stock ownership plans;
3) a non-qualified deferred compensation plan; or
4) an individual retirement account (IRA), a tax sheltered annuity (TSA), Keogh Plan, 401(k) plan, 403(b) plan or 457 deferred compensation arrangement.

**Substance Abuse** means the pattern of pathological use of alcohol or other psychoactive drugs and substances characterized by:
1) impairments in social and/or occupational functioning;
2) debilitating physical condition;
3) inability to abstain from or reduce consumption of the substance; or
4) the need for daily substance use to maintain adequate functioning.

Substance includes alcohol and drugs but excludes tobacco and caffeine.

**The Policy** means the policy which We issued to the Policyholder under the Policy Number shown on the face page.

**We, Our, or Us** means the insurance company named on the face page of The Policy.

**Your Occupation** means Your Occupation as it is recognized in the general workplace. Your Occupation does not mean the specific job You are performing for a specific employer or at a specific location.

**You or Your** means the person to whom this certificate is issued.

25

**Amendatory Rider**



### HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY
**200 Hopmeadow Street**
**Simsbury, Connecticut 06089**
**(A stock insurance company)**

This rider is attached to a certificate given in connection with The Policy.

This rider becomes effective on the certificate effective date.

This rider is intended to amend Your certificate, as indicated below, to comply with the laws of Your state of residence. Only those references to benefits, provisions or terms actually included in Your certificate will affect Your coverage. However, if Your policy is governed under the laws of Maryland, any of the benefits, provisions or terms that apply to the state you reside in as shown below will apply only to the extent that such state requirements are more beneficial to You.

For <u>Alaska</u> residents:
1) The provision titled **Policy Interpretation** is deleted in its entirety.
2) The following provision is added to the **General Provisions** section of Your certificate:
   **Eligibility Determination:** How will We determine Your eligibility for benefits?
   We, and not Your Employer or plan administrator, have the responsibility to fairly, thoroughly, objectively and timely investigate, evaluate and determine Your eligibility or Your Spouse's or Your beneficiaries for benefits for any claim You or Your Spouse or Your beneficiaries make on The Policy. We will:
   1) obtain with Your or Your Spouse's cooperation and authorization if required by law, only such information that is necessary to evaluate Your or Your Spouse's claim and decide whether to accept or deny Your or Your Spouse's claim for benefits. We may obtain this information from Your or Your Spouse's Notice of Claim, submitted proofs of loss, statements, or other materials provided by You or Your Spouse or others on Your or Your Spouse's behalf; or, at Our expense We may obtain necessary information, or have You or Your Spouse physically examined when and as often as We may reasonably require while the claim is pending. In addition, and at Your or Your Spouse's option and at Your or Your Spouse's expense, You or Your Spouse may provide Us and We will consider any other information, including but not limited to, reports from a Physician or other expert of Your or Your Spouse's choice. You or Your Spouse should provide Us with all information that You or Your Spouse want Us to consider regarding Your or Your Spouse's claim;
   2) consider and interpret The Policy and all information obtained by Us and submitted by You or Your Spouse that relates to Your or Your Spouse's claim for benefits and make Our determination of Your or Your Spouse's eligibility for benefits based on that information and in accordance with The Policy and applicable law;
   3) if We approve Your or Your Spouse's claim, We will review Our decision to approve Your or Your Spouse's claim for benefits as often as is reasonably necessary to determine Your or Your Spouse's continued eligibility for benefits;
   4) if We deny Your or Your Spouse's claim, We will explain in writing to You or Your Spouse or Your beneficiaries the basis for an adverse determination in accordance with The Policy as described in the provision entitled **Claim Denial**.
   In the event We deny Your or Your Spouse's claim for benefits, in whole or in part, You can appeal the decision to Us. If You or Your Spouse choose to appeal Our decision, the process You or Your Spouse must follow is set forth in The Policy provision entitled **Claim Appeal**. If You or Your Spouse do not appeal the decision to Us, then the decision will be Our final decision.

For <u>Arkansas</u> residents:
   The provision titled **Policy Interpretation** is deleted in its entirety.

For <u>Delaware</u> residents:

The definition of **Surviving Spouse** in the **Survivor Income Benefit** is amended to read as follows:
**Surviving Spouse** means Your spouse who was not legally separated or divorced from You when You died.
"Spouse" will include Your domestic partner provided You:

1) have executed a domestic partner affidavit satisfactory to Us, establishing that You and Your partner are domestic partners for purposes of The Policy; or
2) have registered as domestic partners with a government agency or office where such registration is available and provide proof of such registration unless requiring proof is prohibited by law.

You will continue to be considered domestic partners provided You continue to meet the requirements described in the Domestic Partner Affidavit or required by law.

For <u>Indiana</u> residents, the following sentence is added to the **Policy Interpretation** provision:

This provision applies where the interpretation of The Policy is governed by the Employee Retirement Income Security Act of 1974, as amended (ERISA).

For <u>Louisiana</u> residents, the following provision is added:

**Reinstatement after Military Service:** *Can my coverage be reinstated after return from active military service?*
If Your coverage terminates because You enter active military service, coverage for You may be reinstated, provided You request such reinstatement upon Your return to work from active military service.

The reinstated coverage will:

1) be the same coverage amounts in force on the date coverage terminated; and
2) not be subject to any Waiting Period for Coverage, Evidence of Insurability or Pre-existing Conditions Limitations; and be subject to all the terms and provisions of The Policy Reference.

For <u>Massachusetts</u> residents,

1) The following is added to the **Continuation Provisions:**

In accordance with Massachusetts state law, if Your insurance terminates because Your employment terminates or You cease to be a member of an eligible class, Your insurance will automatically be continued until the end of a 31 day period from the date Your insurance terminates or the date You become eligible for similar benefits under another group plan, whichever occurs first.

Additionally, if Your insurance terminates because Your employment is terminated as a result of a plant closing or covered partial closing, Your insurance may be continued. You must elect in writing to continue insurance and pay the required premium for continued coverage. Coverage will cease on the earliest to occur of the following dates:

1) 90 days from the date You were no longer eligible for coverage as a Full-time Active Employee;
2) the date You become eligible for similar benefits under another group plan;
3) the last day of the period for which required premium is made;
4) the date the group insurance policy terminates; or
5) the date Your Employer ceases to be a Participant Employer, if applicable.

Continued coverage is subject to all other applicable terms and conditions of The Policy.

2) The **Surviving Children** definition in the **Survivor Income Benefit** will also include a child in the process of adoption.

For <u>Maine</u> residents, the following provision is added:

**Reinstatement:** *Can my coverage be reinstated after it ends?*

We will reinstate The Policy upon receipt of all current and late premiums if:

1) You, any person authorized to act on Your behalf, or any of Your dependents may request reinstatement of The Policy within 90 days following cancellation of The Policy for nonpayment of premium provided You suffered from cognitive impairment or functional incapacity at the time the contract cancelled; and
2) all current and late premium payments are received within 15 days of Our request.

We may request a medical demonstration, at Your expense, that You suffered from cognitive impairment or functional incapacity at the time of cancellation of The Policy.

For <u>Minnesota</u> residents:

1) the definition of **Any Occupation** is amended by the addition of the phrase "or may reasonably become qualified" to the first line;

2) The first two paragraphs of the **Pre-Existing Conditions Limitation** provision are deleted and replaced by the following:

No benefit will be payable under The Policy for any Disability that is due to, contributed to by, or results from a Pre-Existing Condition, unless such Disability or loss is incurred:

   1) After the lesser of the last day of:
      a) the number of days stated in Your certificate; or
      b) 730 consecutive days;
     while insured, during which you receive no medical care for the Pre-Existing Condition; or
   2) After the lesser of the last day of:
      a) the number of days stated in Your certificate; or
      b) 730 consecutive days;
     during which you have been continuously insured under The Policy.

The amount of a benefit increase, which results from a change in benefit options, a change of class or a change in The Policy, will not be paid for any disability that is due to, contributed to by, or results from a Pre-Existing Condition, unless such Disability begins:

   1) After the lesser of the last day of :
      a) the number of days stated in Your certificate; or
      b) 730 consecutive days;
     while insured for the increased benefit amount during which you receive no medical care for the Pre-Existing Condition; or
   2) After the lesser of the last day of :
      a) the number of days stated in Your certificate; or
      b) 730 consecutive days;
     during which you have been continuously insured for the increased benefit amount.

3) The definition of **Pre-existing Condition** in the **Pre-Existing Conditions Limitation** provision is deleted and is replaced by the following:

**Pre-existing Condition** means any accidental bodily injury, sickness, Mental Illness, pregnancy, or episode of Substance Abuse for which You received Medical Care during the lesser of:

   1) the period of time stated in Your certificate; or
   2) the 730 day period;
   that ends the day before:
   1) Your effective date of coverage; or
   2) the effective date of a Change in Coverage.

For <u>Missouri</u> residents, the **Exclusion** related to intentionally self-inflicted Injury is replaced by the following:
   Intentionally self-inflicted Injury, suicide or attempted suicide, while sane; or

For <u>Montana</u> residents, pregnancy will be covered, the same as any other Sickness, anything in the Policy to the contrary notwithstanding.

For <u>New Hampshire</u> residents:
1) The **Policy Interpretation** provision is deleted and replaced by the following:
   Under ERISA, We are hereby designated by the plan sponsor as a claim fiduciary with discretionary authority to determine eligibility for benefits and to interpret and construe the terms and provisions of The Policy. As claim fiduciary, We have a duty to administer claims solely in the interest of the participants and beneficiaries of the employee benefit plan and in accordance with the documents and instruments governing the plan. This assignment of discretionary authority does not prohibit a participant or beneficiary from seeking judicial review of Our benefit eligibility determination after exhausting administrative remedies. The assignment of discretionary authority made under this provision may affect the standard of review that a court will use in reviewing the appropriateness of Our determination. In order to prevail, a plan participant or beneficiary may be required to prove that Our determination was arbitrary and capricious or an abuse of discretion.
2) The time periods stated in the **Claim Appeal** provision are changed to 180 days, if less than 180 days.

For <u>New York</u> residents, the definition of **Surviving Spouse** in the **Survivor Income Benefit** deleted and replaced by the following:
   **Surviving Spouse** means Your wife, husband or partner in a same-sex marriage who was not legally separated or divorced from You when You died. "Spouse" will include Your domestic partner, provided You have executed a Domestic Partner Affidavit acceptable to us, establishing that You and Your partner are domestic partners for purposes of The Policy. You will continue to be considered domestic partners provided You continue to meet the requirements described in the Domestic Partner Affidavit.

For all <u>North Carolina</u> residents:
1) The definition of **Other Income Benefits** is amended by the deletion of mandatory "no-fault" automobile insurance plan;
2) The following is added to the definition of **Regular Care of a Physician:**
   You are not required to be under the Regular Care of a Physician if qualified medical professionals have determined that further medical care and treatment would be of no benefit to You.
3) The exclusion regarding Workers' Compensation benefits is replaced by the following in the **Exclusions** provision:
   for which the final adjudication of a Workers' Compensation claim determines that benefits are paid, or may be paid, if duly claimed;
4) The **Subrogation** provision is deleted.
5) The **Reimbursement** provision is deleted.

For North Carolina residents covered under a policy issued to a Trust:
1) The **Misstatement** provision is amended by the deletion of the phrase except fraudulent misstatements.
2) The **Sending Proof of Loss** provision is amended as follows:
   Written Proof of Loss must be sent to Us within 180 days following the completion of the Elimination Period.
3) The **Claims to be Paid** provision is amended as follows:
   We may pay up to $3,000 to a person who is Related to You and who, at Our sole discretion, is entitled to it. Any such payment shall fulfill Our responsibility for the amount paid.
4) The **Notice of Claim** provision is amended to require the phrase or Our representative in the first sentence.

For <u>Oregon</u> residents:
1) The following is added to the definition of **Surviving Spouse** in the **Survivor Income Benefit**:
   Spouse will include Your domestic partner provided You have registered as domestic partners with a government agency or office where such registration is available.
2) The definition of **Surviving Children** in the **Survivor Income Benefit** is amended to include children related to You by domestic partnership.
3) The following is added to the **Continuation Provisions** for Employers with 10 or more employees:
   <u>Jury Duty:</u> If You are scheduled to serve or are required to serve as a juror, Your coverage may be continued until the last day of Your Jury Duty, provided You:
1) elected to have Your coverage continued; and
2) provided notice of the election to Your Employer in accordance with Your Employer's notification policy.

For <u>Rhode Island</u> residents:
1) The definition of **Surviving Spouse** in the **Survivor Income Benefit** is amended to read as follows:
   **Surviving Spouse** means Your spouse who was not legally separated or divorced from You when You died. "Spouse" will include Your domestic partner provided You:
   1) have executed a domestic partner affidavit satisfactory to Us, establishing that You and Your partner are domestic partners for purposes of The Policy; or
   2) have registered as domestic partners with a government agency or office where such registration is available and provide proof of such registration unless requiring proof is prohibited by law.
   You will continue to be considered domestic partners provided You continue to meet the requirements described in the Domestic Partner Affidavit or required by law.
2) The provision titled **Policy Interpretation** is deleted in its entirety.

For <u>South Carolina</u> residents:
1) The second paragraph of the **Continuity from a Prior Policy** provision is replaced by the following:
   *Is my coverage under The Policy subject to the Pre-existing Condition Limitation?*
   If You become insured under The Policy on the Policy Effective Date and were covered under the Prior Policy within 30 days of being covered under The Policy, the Pre-existing Conditions Limitation will end on the earliest of:
   1) the Policy Effective Date, if Your coverage for the Disability was not limited by a pre-existing condition restriction under the Prior Policy; or
   2) the date the restriction would have ceased to apply had the Prior Policy remained in force, if Your coverage was limited by a pre-existing condition limitation under the Prior Policy.
2) The following is added to the **Physical Examinations and Autopsy** provision: "Such autopsy must be performed during the period of contestability and must take place in the state of South Carolina."

29

For South Dakota residents:
1)  The definition of **Physician** is deleted and replaced by the following:
    **Physician** means a person who is:
    1)  a doctor of medicine, osteopathy, psychology or other legally qualified practitioner of a healing art that We recognize or are required by law to recognize;
    2)  licensed to practice in the jurisdiction where care is being given;
    3)  practicing within the scope of that license; and
    4)  not You or Your Spouse or Related to You or Your Spouse by blood or marriage, unless such physician is the only one in the area and is acting within the scope of their normal employment.
2)  The definition of **Other Income Benefits** is amended by the deletion of all references to Your family, Your spouse and/or children.
3)  The provision titled **Policy Interpretation** is deleted in its entirety.

For Utah residents:
1)  The **Policy Interpretation** provision is replaced by the following:

    **Policy Interpretation:** *Who interprets the terms and conditions of The Policy?*
    **Benefits under this plan will be paid only if We decide in Our discretion that You are entitled to them. We also have discretion to determine eligibility for benefits and to interpret the terms of conditions of the benefit plan. Determinations made by Us pursuant to this reservation of discretion do not prohibit or prevent You from seeking judicial review in federal court of Our determinations.**

    **The reservation of discretion made under this provision only establishes the scope of review that a federal court will apply when You seek judicial review of Our determination of eligibility for benefits, the payment of benefits, or interpretation of the terms and conditions applicable to the benefit plan.**

    **We are an insurance company that provides insurance to this benefit plan and the federal court will determine the level of discretion that it will accord to Our determinations.**
2)  Item 3 of the second paragraph of the **Sending Proof of Loss** provision is deleted.

For Vermont residents:
**Purpose**: Vermont law requires that health insurers offer coverage to parties to a civil union that is equivalent to coverage provided to married persons.
**Definitions, Terms, Conditions and Provisions**: The definitions, terms, conditions or any other provisions of the policy, contract, certificate and/or riders and endorsements to which this mandatory endorsement is attached are hereby amended and superseded as follows:
1)  Terms that mean or refer to a marital relationship, or that may be construed to mean or refer to a marital relationship, such as "marriage", "spouse", "husband", "wife", "dependent", "next of kin", "relative", "beneficiary", "survivor", "immediate family" and any other such terms, include the relationship created by a civil union established according to Vermont law.
2)  Terms that mean or refer to the inception or dissolution of a marriage, such as "date of marriage", "divorce decree", "termination of marriage" and any other such terms include the inception or dissolution of a civil union established according to Vermont law.
3)  Terms that mean or refer to family relationships arising from a marriage, such as "family", "immediate family", "dependent", "children", "next of kin", "relative", "beneficiary", "survivor" and any other such terms include family relationships created by a civil union established according to Vermont law.
4)  "Dependent" means a spouse, a party to a civil union established according to Vermont law, and a child or children (natural, stepchild, legally adopted or a minor or disabled child who is dependent on the insured for support and maintenance) who is born to or brought to a marriage or to a civil union established according to Vermont law.
5)  "Child or covered child" means a child (natural, step-child, legally adopted or a minor or disabled child who is dependent on the insured for support and maintenance) who is born to or brought to a marriage or to a civil union established according to Vermont law.
**CAUTION:  FEDERAL LAW RIGHTS MAY OR MAY NOT BE AVAILABLE**

Vermont law grants parties to a civil union the same benefits, protections and responsibilities that flow from marriage under state law. However, some or all of the benefits, protections and responsibilities related to health insurance that are available to married persons under federal law may not be available to parties to a civil union. For example, federal law, the Employee Income Retirement Security Act of 1974 known as "ERISA", controls the employer/employee relationship with regard to determining eligibility for enrollment in private employer health benefit plans. Because of ERISA, Act 91 does not state requirements pertaining to a private employer's enrollment of a party to a civil union in an ERISA employee welfare benefit plan. However, governmental employers (not federal government) are required to provide health benefits to the dependents of a party to a civil union if the public employer provides health benefits to the dependents of married persons. Federal law also controls group health insurance continuation rights under COBRA for employers with 20 or more employees as well as the Internal Revenue Code treatment of health insurance premiums. As a result, parties to a civil union and their families may or may not have access to certain benefits under this policy, contract, certificate, rider or endorsement that derive from federal law. You are advised to seek expert advice to determine your rights under this contract.

For Washington residents:
1) The following is added to the **Continuation Provisions** provision:
   General Work Stoppage (including a strike or lockout): If Your employment terminates due to a cessation of active work as the result of a general work stoppage (including a strike or lockout), Your coverage shall be continued during the work stoppage for a period not exceeding 6 months. If the work stoppage ends, this continuation will cease immediately.
2) The provision titled **Policy Interpretation** is deleted in its entirety.
3) The following provision is added to the **General Provisions** section of Your certificate:
   **Eligibility Determination**: *How will We determine Your eligibility for benefits?*
   We, and not Your Employer or plan administrator, have the responsibility to fairly, thoroughly, objectively and timely investigate, evaluate and determine Your or Your Spouse's or Your beneficiaries' eligibility for benefits for any claim You or Your Spouse or Your beneficiaries make on The Policy. We will:
   1) obtain with Your or Your Spouse's cooperation and authorization if required by law, only such information that is necessary to evaluate Your or Your Spouse's claim and decide whether to accept or deny Your or Your Spouse's claim for benefits. We may obtain this information from Your or Your Spouse's Notice of Claim, submitted proofs of loss, statements, or other materials provided by You or Your Spouse or others on Your or Your Spouse's behalf; or, at Our expense We may obtain necessary information, or have You or Your Spouse physically examined when and as often as We may reasonably require while the claim is pending. In addition, and at Your or Your Spouse's option and at Your or Your Spouse's expense, You or Your Spouse may provide Us and We will consider any other information, including but not limited to, reports from a Physician or other expert of Your or Your Spouse's choice. You or Your Spouse should provide Us with all information that You or Your Spouse want Us to consider regarding Your or Your Spouse's claim;
   2) consider and interpret The Policy and all information obtained by Us and submitted by You or Your Spouse that relates to Your or Your Spouse's claim for benefits and make Our determination of Your or Your Spouse's eligibility for benefits based on that information and in accordance with The Policy and applicable law;
   3) if We approve Your or Your Spouse's claim, We will review Our decision to approve Your or Your Spouse's claim for benefits as often as is reasonably necessary to determine Your or Your Spouse's continued eligibility for benefits;
   4) if We deny Your or Your Spouse's claim, We will explain in writing to You or Your Spouse or Your beneficiaries the basis for an adverse determination in accordance with The Policy as described in the provision entitled **Claim Denial**.
   In the event We deny Your or Your Spouse's claim for benefits, in whole or in part, You can appeal the decision to Us. If You or Your Spouse choose to appeal Our decision, the process You or Your Spouse must follow is set forth in The Policy provision entitled **Claim Appeal**. If You or Your Spouse do not appeal the decision to Us, then the decision will be Our final decision.

In all other respects the certificate remains the same.


Signed for Hartford Life and Accident Insurance Company

**Terence Shields,** *Secretary*          **Michael Concannon,** *Executive Vice President*

**The Plan Described in this Booklet**
**is Insured by the**

**Hartford Life and Accident Insurance Company**
**Simsbury, Connecticut**
**Member of The Hartford Insurance Group**